NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0413n.06

Case Nos. 15-5850 & 15-5851

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 22, 2016
DEBORAH S. HUNT, Clerk

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TERRY R. SMITH (15-5850); GERRY | ) | KENTUCKY |
| SMITH (15-5851), | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: COLE, Chief Judge; BATCHELDER and COOK, Circuit Judges.

COOK, Circuit Judge. A jury convicted Terry and Gerry Smith, husband and wife, of conspiring to distribute oxycodone. It also convicted Terry of distributing oxycodone resulting in the death of another and of being a felon in possession of a firearm. Both Terry and Gerry appeal, and we AFFIRM.

I.

The Smiths owned and operated a trailer park in Manchester, Kentucky. From that perch they orchestrated a drug trafficking scheme in which they recruited addicts—often park tenants—to travel to out-of-state pain clinics to fraudulently obtain and fill oxycodone prescriptions. The Smiths compensated recruits with pills, cash, or reduced rent.

Terry organized and financed the clinic visits and prescription fillings, while Gerry handled the money and kept records. Sometimes Terry or Gerry would personally travel to pain clinics, and Terry brought a gun on at least one trip. Both sold or oversaw the sale of oxycodone and used the proceeds to fund more pain-clinic trips.

In the course of the conspiracy, Patty Smallwood—one of the Smiths' tenant-recruits—died. The day before her death, Terry financed a trip on which Patty and her fiancé fraudulently obtained and filled an oxycodone prescription. Upon their return, Terry collected his share of pills and returned the rest to Patty. Patty retired to her trailer, snorted those pills, and was dead by morning. A toxicology report described Patty's cause of death as combined drug intoxication.

A grand jury indicted Terry and Gerry for their drug conspiracy. It also indicted Terry for distributing the oxycodone that killed Patty and for being a felon in possession of a firearm. Terry moved to sever the firearm charge, which the district court denied. A jury convicted Terry and Gerry on their respective counts. They appeal.

## II.

Terry and Gerry both argue that the district court erred by not severing Terry's firearm charge from their other charges for trial. Terry also challenges the sufficiency of the evidence supporting his conviction for Patty's death and suggests cumulative error rendered his trial unfair. Gerry argues that the evidence offered at trial amounted to a constructive amendment or a variance to the indictment and further claims that insufficient evidence supported her drug conspiracy conviction. We address each claim in turn.

A. *Severing Terry's Firearm Offense*

Both Terry and Gerry contend that the district court erred by maintaining Terry's felon-in-possession charge alongside their drug-related charges because the offenses were unrelated,

resulting in prejudice. Terry moved to sever the charges before trial, and we review the court's denial for an abuse of discretion. *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007) (citing *United States v. Jacobs*, 244 F.3d 503, 506–07 (6th Cir. 2001)). Gerry, on the other hand, raises her challenge for the first time on appeal, so she must show plain error. *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015).

The Sixth Circuit recognizes the efficiency of joining firearm and drug charges when the face of the indictment shows that the charges are "sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan." *United States v. Chavis*, 296 F.3d 450, 459 (6th Cir. 2002) (quoting *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987)); *see also* Fed. R. Crim. P. 8(a). Here, the indictment alleges that Terry's firearm possession furthered the purpose of the Smiths' distribution scheme over the course of roughly two years, including the date when Patty died. Multiple witnesses testified that Terry carried a firearm with him during the conspiracy. And police seized weapons and ammunition—some found alongside prescription bottles—from one of the Smiths' properties. The nexus between the charges suffices.

Terry and Gerry retort that, even if the charges relate, joining them resulted in "compelling, specific, and actual prejudice." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005); *see also* Fed. R. Crim. P. 14(a). Terry, specifically, accuses the government of belatedly adding the felon-in-possession charge to gain an advantage from the resulting prejudice. But nothing suggests the government nefariously amended the indictment. And although elucidating a defendant's past crimes carries prejudicial potential, we have acknowledged the curative effects of stipulations and limiting instructions. *See Atchley*,

474 F.3d at 853. Here, Terry stipulated to his prior felony, and the district court cautioned the jury to consider the charges separately, which minimized the possibility of prejudice.

As for Gerry, she argues that evidence of Terry's firearm offense had a spillover effect, causing the jury to associate her own lawful firearm possession with her husband's unlawful possession. We are not convinced. "As a general rule, persons jointly indicted should be tried together," *Murr v. United States*, 200 F.3d 895, 903–04 (6th Cir. 2000) (quoting *United States v. Stull*, 734 F.2d 439, 446 (6th Cir. 1984)), and "the jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately," *id.* at 904 (alteration omitted) (quoting *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996)). Again, the district court quelled any potential prejudice by instructing the jury to consider the charges separately. *Atchley*, 474 F.3d at 853. We discern neither an abuse of discretion nor plain error in the district court's handling of Terry's firearm offense.

B. *Sufficiency of Evidence Regarding Terry's 21 U.S.C. § 841(a)(1) Conviction*

Terry challenges the sufficiency of the evidence supporting his conviction for distributing oxycodone resulting in Patty's death. To sustain his conviction under 21 U.S.C. § 841(a)(1) with a death results enhancement under § 841(b)(1)(C), the government must have proved: "(1) knowing or intentional distribution of [an illicit drug] . . . , and (2) death caused by ('resulting from') the use of that drug." *Burrage v. United States*, 134 S. Ct. 881, 887 (2014). We review the evidence in the light most favorable to the prosecution, asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

With respect to the distribution element, Terry attempts to obfuscate his connection to the oxycodone that killed Patty by emphasizing that she obtained the pills through a series of events involving numerous players and stressing that he stayed home on the relevant pill run. But Terry fails to rebut his essential role as the trip's organizer and financer. Nor does he respond to testimony from Patty's fiancé that she snorted the same pills given to her by Terry as compensation for making the trip.

As to causation, Terry suggests that because Patty had four depressants in her system and the coroner conducted no autopsy, no rational juror could conclude that Terry's oxycodone caused her death. But the government need not prove that oxycodone was the sole cause of Patty's death; rather, it need only show that "without the incremental effect" of the oxycodone, Patty would not have died. *United States v. Volkman*, 797 F.3d 377, 395 (6th Cir. 2015) (citing *Burrage*, 134 S. Ct. at 888). It did so. The coroner who examined Patty's body testified that an autopsy was unnecessary because he had ordered a toxicology report. The toxicology report showed that Patty had numerous substances in her body, including a lethal dose of oxycodone, and a forensic toxicologist testified that Patty would not have died had she not consumed oxycodone that night. A reasonable jury could readily determine that Terry's oxycodone killed Patty.

C. *Cumulative Error Affecting Terry's Right to a Fair Trial*

Terry finishes by claiming that the cumulative effect of these purported errors denied him a fair trial. He reasons that the joinder of his felon-in-possession charge effectively "watered down the quantum of evidence" jurors required to convict him of distributing oxycodone resulting in Patty's death. This argument fails, as it simply rehashes Terry's prejudicial-joinder claim that we already rejected.

*D. Constructive Amendment or Variance to Gerry's Indictment*

Turning to Gerry, she argues that evidence offered at trial resulted in a constructive amendment or a variance to the indictment. She contends that a modification occurred when a witness testified that he sold hydrocodone—as opposed to oxycodone—on Gerry's behalf, which the government then referenced in its closing. These statements allegedly grafted a new conspiracy onto the indicted oxycodone conspiracy, thereby robbing Gerry of a fair trial. Because she raises this issue for the first time on appeal, we review for plain error. *See United States v. Benson*, 591 F.3d 491, 497 (6th Cir. 2010) (quoting *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008)).

No modification to the indictment—either constructive amendment or variance— occurred. A constructive amendment requires that "both the evidence presented *and* the jury instructions" undermined the indictment, and Gerry complains of no instructional error. *United States v. Mize*, 814 F.3d 401, 410 (6th Cir. 2016) (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)). And though a variance may result when "the evidence [alone] can 'reasonably be construed only as supporting a finding of multiple conspiracies' rather than the single conspiracy alleged in the indictment," that is not the case here. *Id.* at 410 (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982)). The witness mentioned selling hydrocodone for Gerry once, and he immediately clarified that he meant oxycodone. Moreover, the government's generic reference to that testimony is not "evidence offered at trial to prove facts materially different from those alleged in the indictment." *Hynes*, 467 F.3d at 965 (alterations omitted) (quoting *United States v. Combs*, 369 F.3d 925, 935–36 (6th Cir. 2004)). We discern no plain error.

E. *Sufficiency of the Evidence Regarding Gerry's 21 U.S.C. § 846 Conviction*

Finally, Gerry challenges the sufficiency of the evidence supporting her conviction for conspiracy to distribute oxycodone. To sustain her conviction under 21 U.S.C. § 846, the government must have proved: "(1) an agreement to violate drug laws . . . ; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010) (quoting *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009)). Because Gerry declined to move for a judgment of acquittal at both the close of the government's case-in-chief and the close of the evidence, we must sustain her conviction unless "the record is devoid of evidence pointing to guilt." *Kuehne*, 547 F.3d at 697 (quoting *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)).

The record is not so devoid. Testimony from numerous witnesses established that Gerry: fraudulently obtained oxycodone prescriptions from out-of-state pain; coordinated and collected proceeds from drug sales; handled money and kept records of her and her husband's drug trafficking; and then burned evidence in her backyard. These proofs sufficiently support the conviction.

III.

We AFFIRM both convictions.