Eastern District of Kentucky
F I L E D
NOV 1 5 2017
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY LONDON DIVISION**

**UNITED STATES OF AMERICA**
    **Respondent,**
    **V.**
**Terry Smith**
    **Petitioner,**

**Docket No. CR-13-43**
**App. No. 15-5851**

**PETITIONER'S MEMORANDUM OF POINTS, AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR COLLATERAL RELIEF**
**PURSUANT TO 28 U.S.C §2255**

Now comes, Petitioner, **Terry Smith,** Pro se, alleging a violation of the Sixth Amendment of the U.S. Constitution by way of ineffective assistance of counsel requiring a liberal construction pursuant to the U.S. Supreme Court's principles set forth in, Haines V. Kerner, 404 U.S. 519 (1972), affording Pro se pleadings a liberal construction not required as that of a professionally licensed attorney.

## STATEMENT OF FACTS

(1) On 08/22/2013 a Grand Jury sitting in this district allegedly returned an indictment against Petitioner.

(2) On 12/19/2013 a superseding indictment was handed down charging violations of Title 21 U.S.C. §841, §846, and citing §853 forfeiture statement. (D.O.C. 30)

(3) On 04/03/2014 (D.O.C. 58) a second superseding indictment was handed down adding additional defendants to the offense.

(4) On 12/18/2014 a third superseding indictment was handed down adding additional offenses and counts.

(5) On 01/26/2015 Petitioner was found guilty on counts One, Two, and Three.

(6) During sentencing, the District Court imposed 360 months on Count One (D.O.C. 258), Life on Count Two, and Ten years on Count Three. All to run concurrent, a $300.00 assessment, a $10,000.00 fine, and six years of supervised release.

(7) On July 22, 2016, the Sixth Circuit Court of Appeals affirmed the District Courts Judgement.

## STANDARD OF REVIEW

Strickland v. Washington, 466 U.S. 668, 691, 80 L. Ed. 2d 674 (1984) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary."); Wiggins v. Smith, 539 U.S. 510, 522, 156 L. Ed. 2d 471 (2003) (American Bar Association standards used as a guide in assessing whether an attorney's failure to investigate was reasonable); and also: Bickman v. Bell, 131 F. 3d 1150, 1157 (6th Cir 1997)(defense counsel's preparation for trial amounted to "total failure to actively advocate his clients cause").

Petitioner, presents various Constitutional claims warranting collateral relief based upon this court's record that will be set forth before this court, and factually alleged with circuit precedent, and U.S. Supreme Court authority.

**A.)   The Sixth Amendment provides:**

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial, and public trial, by an impartial jury of the state and district where in the crime shall have been committed, which district shall have been ascertained by law, and to be informed of nature and cause of the accusation; to be confronted with the witnesses in his favor, and to have the assistance of counsel.

## B.)  Strategy standards:

Ramonez v. Berghuis, 490 F. 3d 482, 488(6th Cir. 2007) (Strategic decision is not objectively reasonable when attorney has failed to investigate his options and make a reasonable choice between them); and also: Marcrum v. Luebber, 509 F. 3d 489, 502 (8th Cir. 2007) ("...it is not the court's commission to invent strategic reasons or accept any strategy counsel could have followed without regard to what actually happened; when a petitioner shows that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgement, the petitioner has a possible strategic reason that could have but did not, prompt counsel's course of action").

## C.)  Ineffective Assistance Of Counsel Claims:

1. 6th Amendment violation of the U.S. Constitution: Ineffective trial, and appellate counsels for failure to argue that the plain meaning of "results" implies a stronger degree of causation than mere contribution pursuant to 841(b) (1) (C), and request an expanded jury instruction for clarity of the law. Appellate counsel should have objected pursuant to Fed.R.crim.P.52 (b) Plain Error.
2. Failure to investigate substantive prosecutorial misconduct before the Grand Jury to expose perjured testimony resulting in a violation of the Grand Jury's independence to make determination of true cause.
3. Failure to investigate, object, and request mistrial/acquittal based on hearsay expert testimony regarding the cause of death in violation of the Confrontation Clause of the 6th Amendment of the U.S. Constitution (Patty Smallwood).

4. Failure to object, request mistrial, and acquittal based upon insufficiency of defective indictment, and an impermissibly plead conspiracy to distribute in count one wherein substantive offenses description plead as a continuing offense, lacking activity dates, and resulting in prejudice to petitioner's ability to defend, or plead former Jeopardy in violation of Fed. R.Crim.P.7(c), and Fed.R. Crim.P.12 (b) (3), and Fed.R.Crim.P. 52(b).

5. Failure to object, request mistrial, or limiting instruction for prosecution's improper remarks on direct examination, opening, and closing statement.

6. Failure to object, and request mistrial for court's erroneous charge commanding jury not to consider sentence court considered imposing as a matter of law, was clearly erroneous.

7. Failure to object to court's failure to properly follow statutory procedural requirements pursuant to 21 U.S.C. §851(b), and raise issue pursuant to Fed.R.Crim.P. 52(b) on appellate reviews.

8. Failure to object, and request mistrial based upon Angela Smith's unrelated extraneous testimony pursuant to Fed.R.Crim.Evid.401 through 404, and demand Jencks material for impeachment purposes, 26.2

9. Failure to investigate, object, and request mistrial based upon the Government's solicitation of perjured testimony of Christopher Gregory, appellate counsel should have objected pursuant to Fed.R.Crim.P.52(b), and Brady Doctrine.

10. Failure to investigate, object, and request mistrial for Government's suppression of cooperation agreement of Bill Stanley and Gary Nantz, appellate counsel should have objected pursuant to Fed.R.Crim.P.52 (b).

11. **6th Amendment violation of the U.S. Constitution:**
Ineffective assistance of trial, and appellate counsels for failure to object and request mistrial based upon unrelated/extraneous evidence, appellate counsel was charged with raising this issue pursuant to Fed.R.Crim.P.52 (b).

12. **6th Amendment violation of the U.S. Constitution:**
Trial, and appellate counsels rendered deficient performances by failure to object pursuant to Fed.R.Crim.P.12 (b) (3) (B), and Fed.R.Crim.P.52 (b) dismissal of defective indictment's failure to charge Patty Smallwood's cause of death.

13. **6th Amendment violation of the U.S. Constitution:**
Trial and appellate counsels rendered deficient performance by failure to object to fatal variance of Grand Jury evidence, and testimony, request acquittal, mistrial, and plain error review, Fed.R.Crim.P.52 (b).

14. **6th Amendment violation of the U.S. Constitution:**
Trial and appellate counsels rendered deficient performances by failure to object to prejudicial, and

extraneous overdose testimony, and opening door for damaging testimony, Fed.R.Crim.P.52 (b).

15.     **Failure to file motion** to suppress search warrant evidence introduced in violation of petitioner's 4th Amendment U.S. Constitutional rights, and failure to investigate affidavit for application of probable cause determination.

16.     **6th and 14th Amendment violations of the U.S. Constitution:**
Ineffective assistance of trial counsels failure to object to prosecutorial misconduct post Pre-trial and trial phase. Appellate counsel was charged with raising these issues pursuant to Fed.R.Crim.P.52 (b).

17.     **6th Amendment violation of the U.S. Constitution:**
Ineffective assistance of trial, and appellate counsel's failure to object to prosecutorial misconduct post, pre-trial, and trial phase. Appellate counsel was charged with raising these issues pursuant to Fed.R.Crim.P.52 (b).

18.     **6th Amendment violation of the U.S. Constitution:**
Trial, and appellate counsels rendered deficient performances by failure to object to erroneous jury charge on count one, and two. Petitioner reserves argument for production of instructions.

19.     **6th Amendment violation of the U.S. Constitution:**
Trial, and appellate counsels rendered deficient performances by failure to argue insufficiency of evidence on count three of indictment, 18 U.S.C.

Additional Arguments;

20. — 6th Amendment Violation of the U.S. Constitution; Trial, and Appellant counsel rendered deficient performance by failure to object to Alledged Ky Possession Conviction not being Catergorically qualifying prior Conviction. Petitioner Reserves Argument


21 — 6th Amendment Violation of the U.S. Constitution; Trial and Appellant Counsel Rendered deficent performance by failure to argue Distribution Charges. Petitioner Reserves Argument

§922(g). Petitioner reserves argument at this juncture for production of records specifically (D.O.C. 163).

*See; Attached Page for ※20 ※21*

## ARGUMENT # ONE
## FAILURE TO PROPERLY ARGUE MEANING OF RESULT, 841(b) (1) (c)

Trial and appellate counsel rendered deficient performances by failure to argue that the plain meaning of "results" implies "a stronger degree of causation than mere contribution" within the meaning of 21 U.S.C. 841(b)(1)(C), and request an expanded instruction on same.

In the matter of Santillana v. Upton, Warden FMC Carswell, (NO.15-10606) (5th Cir. Jan.16, 2017). The defendants indictment stated that "[t]he cause of victims death was an acute mixed drug intoxication-more specifically, the combination of methadone and benzodiazepine("Xanax") in Moore's body caused a synergistic central nervous and respiratory depression that led to irreversible []use of [the] methadone resulted in his death," but it made no other reference to causation. The district court instructed the jury that "[I]f you find the defendant guilty of distributing methadone, then you must determine if the Government has proved beyond a reasonable doubt that Brandon Moore's death resulted from his use of methadone distributed by the defendant. Moreover, the court held that based on the indictment and instruction, we cannot say that the jury found that methadone was a but-for cause of death. The court held it was possible that if (the jury) found that methadone was merely a contributing cause of death, the exact problem in Burrage. Santillana satisfied her burden of showing that she was potentially convicted of a non-existent offence. See also Krieger v. United States 2017 U.S. Dist. Lexis 6203 (S.D.111.Jan 17, 2017) Also Gaylord v. United States (July 12, 2016 7th Circuit).

All three of the medical experts in Santillana supra, indicated in trial that there was only evidence of methadone being a contributing

factor to decedent's drug intoxication. See: <u>United States v. Santillana</u>, 604 F. 3d 192, 193-97 (5th Cir. 2010). Although the Fifth circuit did not address certain issues regarding Santillana's claims while affirming judgement she resorted to 28 U.S.C. 2241 citing actual innocence by court's failure to properly apply statutory substantive interpretation of 841(b)(1) (C) wherein the court subsequently argued with her view. Nevertheless, Petitioner Smith's case is almost identical to the circumstances, and details of Santillana supra ("except") in one material aspect which is an autopsy was done in Santillana supra, and NONE was done in the instant offense, however, Four separate, and distinct drugs were listed on Patty Smallwood's death certificate as follows: (1). Oxycodone; (2) Xanax; (3) T.H.C., and (4) hydrocodone. See exh. ( ) Trial Transcripts.1513 16/24, Trial Transcripts.p.1514 1/22, see specifically: Trial Transcripts.p.1519 18/25, and Trial Transcripts.p.1520 1-2, exh. ( ) (D.O.C. 287)


<u>(Jared Becknell) (CORONER)</u>
"Q.  Okay. And what you certified on the death certificate, which they put in as Exhibit 10, is the combined drug intoxication.
A. Yes sir.
Q. Okay. You're not a toxicologist?
A. No sir.
Q: okay, so you can't say with any certainty that one thing or the other caused Miss Smallwood's death, but just of the interaction is what you—
A: Correct.
The second government witness to be called was Michael Ward (toxicologist) see, Trial Transcripts.p. 1530 6/14, exh (0) (D.O.C. 287)
Q:" and along those same lines, absent the — well, let me go back. The coroner's report reflects that the cause of death is a combined drug intoxication. Do you have any thoughts or opinions on that determination?

A: I would tend to agree with that inasmuch as you have two opiates, hydrocodone and oxycodone, both working in the same fashion in depressing the central nervous system, causing a reduction in the ability for you to breath. That's the respiratory depression.

Then you've also got basically two benzodiazepines which are also affecting the central nervous system. So the combination of those certainly could be a contributing factor.

Dr. Michael Ward, Government witness was then ask: Trial Transcripts. 1534. Lines 7-24

Q: my question to you is can you state to the jury, within a medical certainty, if the only thing in Ms. Smallwood's system was the opiates that it would have caused her death?

A: "NO".

Q: second, the actual cause of death being this drug intoxication, "without an autopsy", Can you really even say that that's the cause of death?

A: in looking at those levels, I think that that's not an arbitrary or out of the question cause of death.

Q: I understand that it's probably or may be possible that that's what it is. But there are other causes. She could have had a heart attack?

A: "YES, sir".

Q: Okay, can't rule that out as a cause of her death?

A: NO, sir

Q: Can't rule out she may have had a stroke?

A: No, sir.

Patty Smallwood's cause of death was based on **ASSUMPTIONS** as agreed by Toxicologist and government witness Michael Ward, Trial Transcripts. 1531 line 3-4 "Assuming that overdose was the cause of death"?

Toxicologist and Government witness Michael Ward testified before
the trial jury to explain in detail the affects and many different types of
drugs in {Patty Smallwood's system. The toxicologist testified there
were 5 different distinct types of drugs listed on the toxicology report.
**First: Benzodiazepine (Valium)** Trial Transcripts, page 1525 line 25
**Second: alprazolam (Xanax)** - Trial Transcripts, page 1526 line 14
**Third: T.H.C.** Trial Transcripts, page 1526 line 16
**Fourth: Hydrocodone**- Trial Transcripts, page 1527 line 1-4
**Fifth: Oxycodone**- Trial Transcripts, page 1527 Line 5


The third expert a George R. Nicholas, II M.D. of commonwealth
medical legal services appeared for petitioner's defense as follows:
(D.O.C. 289) Transcript. P. 1784 1/18, exh (0)
"To the medical examiner's office in Frankfort, where a complete
autopsy should have been performed. That did not happen.
Q: and what's the significance of the absence of an autopsy for you,
doctor?
A: well, without an autopsy, you can never definitely determine the
cause of death. We have some toxicology reports which may have been
the cause of death, but **clearly have not been proven** to be the cause of
death.
I mean, if you remember Elvis Presley, who died in his bathroom,
he had enough drugs in him to kill an elephant, but it didn't: he died
from heart disease.
So by just measuring the amount of a drug or substance,
substances to be present in body fluid or body tissues does not in any
way assure me, as a forensic pathologist, that that material here in this
case tested at AIT and quantified at AIT indeed caused the death of
Miss Smallwood."
Nevertheless, the next two material, and substantive points are:
(1) the text of Petitioner's indictment provides:
(D.O.C. 163) (Third superseding indictment) exh (0)

## Count 2
### 21 U.S.C. 841 (a) (1)

On or about September 9, 2011, in Clay County, in the Eastern District of Kentucky,

#### Terry R. Smith

Did knowingly and intentionally distribute a quantity of pills containing oxycodone, a schedule II controlled substance, which resulted in the death of Patty Smallwood, all in violation of 21 U.S.C. 841 (a) (1).

And: (2) Petitioner's jury charge is the identical match as the charge as given in Santillana supra:

(D.O.C. 290) (Jury charge) Transcript.p.1903 5/18, exh (0)

"If, and only if, you find the defendant, Terry Smith, guilty of the offense charged in count 2, you must determine whether Patty Smallwood's death was a result of the distribution.

The government must prove, beyond a reasonable doubt, that Patty Smallwood's death was caused by or resulted from her use of the oxycodone that was distributed by the defendant. You must decide whether the result, which is the death of Patty Smallwood, would not have occurred but for the distribution of oxycodone by the defendant, Terry Smith.

In other words, you must decide whether the Government has proved beyond a reasonable doubt, that Patty Smallwood would have lived if she had not taken the oxycodone distributed by the defendant."

Moreover, the instant offense is identical to Santillana supra., in three aspects as follows:

(1) the medical experts all agreed that the decedents could have Hypothetically died from a combined drug intoxication;

(2) they all agreed that the particular charged narcotic was but a contributing factor in decedents death, and

(3) both indictments failed to cite an independent cause of death, and the jury charges on "but-for causation" are the same.

More specifically, Mr. Smith's indictment alleged that Mrs. Smallwood's death [R]esulted from Petitioner's distribution of oxycodone the governments evidence established only that the alleged distribution of oxycodone was only a [C]ontributing factor and the record including the jury charge lacked any indication of the [C]ause of Mrs. Smallwood's death, and based on Petitioners indictment, and instruction it cannot be said that the jury found that oxycodone was merely a but-for cause of death. Moreover it is possible that the jury found that oxycodone was merely a contributing cause of death, the exact problem in Santillana, and Burrage. Mr. Smith has satisfied his burden of showing that he was potentially convicted of a non-existent offense warranting resort to the actual innocence exception.

Nevertheless, the Sixth circuit court of appeals' "incremental effect" holding in United States v. Volkman, 797 F. 3d 377, 395 (6th Cir. 2015) is an erroneous interpretation of Burrage. And is in direct conflict of the principled application of Burrage, because "incremental Effect" is synonymous with "contributing factor". See Burrage, 134 S. Ct. at 892 ("contributing-cause" test would treat it as a cause-in fact or omission that makes a positive incremental contribution, however small, to a particular result, see brief for State of Alaska et al, as amici curiae 20; see also Black Law's Dictionary 250(9th ed. 2009) (defining "contributing cause" as "[A] factor that-though not the primary cause-plays a part in producing a result"). Trial counsel should have requested an expanded instruction. See: Lunchenburg v. Smith, 79 F.3d 388 (4th Cir. 1996)(court found that counsel was ineffective for failing to request an expanded instruction more accurately explaining to the jury that it could not convict Petitioner of a compound handgun charge unless it first found him guilty of a predicate crime of violence).

Petitioner, asserts reliance on the miscarriage of justice exception of 2255 being that the above claim also independently falls within the actual innocence exception thus this court is empowered by Congress to correct fundamental defects that inherently results in miscarriage of justice if left uncorrected. Moreover, petitioner has suffered a grave

error being that the erroneous mandatory statutory minimum sentence removed the courts discretion, and subjected him to a severe punishment for conduct not criminal. See: United States v. Addonizio, 4432 U.S. 178, 185 (1979) discussing miscarriage of justice, fundamental defect exception to 28 U.S. 198, 203(2001)(in assessing whether counsel's deficient performance prejudiced a defendant "any amount of actual jail time has Sixth Amendment significance"). See: Rompilla v. Beard, 360 U.S. 374 (2005) (Reasonable efforts by grail counsel would have included obtaining file to learn what state knew about the crime, discover any mitigating evidence, and anticipate the details of the aggravating evidence).

## ERIC S. EDWARDS PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO OBJECT TO INSTRUCTION NUMBER 17, WHERE THE USE OF THE DRUG ALLEGEDLY DISTRIBUTED BY TERRY SMITH WAS NOT AN INDEPENDENTLY SUFFICIENT CAUSE OF PATTY SMALLWOOD'S DEATH

To prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two prong test enunciated in Strickland v. Washington, 466 U.S 668, 687 80 LEd. 2d 674 104 S.Ct. 2052 (1984). First, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness Id. Second, a defendant must prove that, but for counsel's deficient performance the outcome of the proceeding likely would have been different. Id. Therefore, deficient jury instruction in a criminal case as to definition of reasonable doubt for purposes of prosecution's burden of proving guilt beyond a reasonable doubt, will always invalidate conviction. See Sullivan v. Louisiana, 124 LEd. 2d 182, 113 SCt 2078 (1993); United States v. Blanchard, 618 F3d 652 (6th Cir. 2010); United States v. Adams, 583 F. 3d 457 (6th Cir. 2009).

**I.** **Counsel Edwards's performance fell below an objective standard of reasonableness when he failed to object to instruction number 17.**

Terry Smith was charged with two counts of indictment. The second count charges Smith for knowingly and intentionally distributing a quantity of pills containing Oxycodone a Schedule II controlled substance, which resulted in the death of Patty Smallwood, in violation of 21 U.S.C 841 (a) (1). See Doc. #58 at 2. Thereby, the record clearly shows that during the jury instructions conference and in regards to jury instruction number 17, the Judge propose to do is to simply say, do you, the jury, find beyond a reasonable doubt that the defendant, Terry Smith, is guilty of distribution of Oxycodone, Guilty, not Guilty. If you find the defendant guilty of distribution, you must answer the special interrogatory. The special interrogatory would ask whether or not the jury finds that the government has proved beyond a reasonable doubt that Patty Smallwood would have lived if she had not taken the Oxycodone. See Doc. #284 at 1239. Further, Counsel Edwards states that he did not have objection to the Judge proposal to the deficient jury instruction. Id.

   a) Jury Instruction Number 17 was deficient.

   Jury Instruction Number 17 was deficient because the fact that, the defendant was responsible for the distribution of the Oxycodone confused the jury in regards to a determination of whether Patty Smallwood's death was a result of the distribution of Oxycodone. However, that the plain meaning of results implies a stronger degree of causation than mere contribution. See Santillana v. Upton 846 F. 3d 779 (5th Cir. 2017). Moreover, in Burrage v. United States, 134 SCt. 881 (2013) the Supreme Court held that, where use of a drug distributed by a defendant

was not an independently sufficient cause of a victims death or serious bodily injury, the defendant could not be liable for penalty enhancements under § 841 (b)(1)(c). Unless such use was a but for cause of the death or injury. Because the controlled substances act did not define the phrase results from the court gave the phrase its ordinary meaning, i.e., that a thing results when it arises as an effect, issues or outcome from some action, process or design. In the usual course, that required proof that the harm would not have occurred in the absences of that is, but for a defendant's conduct.

b) **A combined drug intoxication was the cause of Patty Smallwood's death.**

During the trial Dr. George Nichols (Chief Medical examiner and director of a series of anatomic and clinical pathology laboratories), testified that, the cause of Patty Smallwood's death was an overdose due to a combined drug effect. See Doc. #289 at 1789-91, 1799-1800., and that the Oxycodone alone was not the cause or the result of her death.

Furthermore, Dr. Ward testified that, the cause of death was a combined drug intoxication of Nardiozepam, Alprazolam, Marijuana, Opiates and Oxycodone and that the Oxycodone alone was NOT the result of Patty Smallwood's death. See Doc. #287 at 1526-1530. As outlined above, Counsel Edwards was aware during the pretrial stage of the toxicologist report and that he failed to object to the wrong standard used when the district court instructed the jury. First Strickland Prong. Id. Burrage at 134 SCt.

c) **Counsel's failure to object to the wrong standard used when the district court instructed the jury, highly prejudiced Terry Smith.**

Accordingly, in Terry Smith's case like in <u>Burrage</u>, the district court used the wrong standard when it instructed the jury. Counsel's failure to object to the deficient jury instruction highly prejudiced Terry Smith because the law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause when a crime requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause and (2) the legal cause (often called the proximate cause of the <u>result</u>). Thereby, the Oxycodone alone was not the actual cause of Patty Smallwood's death and Terry Smith's Conviction is INVALID.

In light of the foregoing Terry Smith's sentence should be vacated.


## ARGUMENT #2
## PROSECUTORIAL INVESTIGATIVE GRAND JURY ABUSE

During the grand jury proceedings of petitioners case (grand jury transcripts enclosed), the agents, Richard and Iain Dalrymple DEA, went before a Federal grand jury in London and Lexington KY, and falsely misled those grand jury's biasedly by asserting with absolutely no evidence that petitioner Terry Smith moved firearms to his Berea residence himself; the jurors were informed that witnesses allegedly told them (DEA) that people saw the petitioner with firearms on numerous occasions and threatened people with them. Fraudulently testified before the grand jury that records were discovered from petitioners Berea residence, and that he (DEA) was not aware of

whether the Smith's had a legitimate income other than the distribution of oxycodone. See attached exh (B) and Trial Testimony attachments contradicting the materially false grand jury testimony. See: <u>United States v. Williams</u> 504 U.S. 36(1992) (the due process clause requires that the conduct of the prosecutor before the grand jury comports with "fundamental fairness" moreover courts applying the fundamental fairness standard have found due process violations where the prosecutor used grossly improper arguments before the grand jury or purposely presented critical perjured testimony. See: Williams, 504 U.S. footnote (citing several provisions of the United States code describing misconduct).

Further, petitioner Smith's grand jury testimony indicates additional critical statements of perjured testimony designed to bias the grand jury into finding probable cause. See: exh (A) (Grand Jury Transcripts), P7, 24/25. And P. 8, lines 1-3 1/3, witness states "The [A]utopsy or cause of death, or death certificate for Patty Smallwood states that there was more than one drug other than oxycodone, she (Ms. Smallwood) had a lethal level of Oxycodone and Xanax in her system; but during trial the governments true facts changed to : Ms. Smallwood having four narcotic drugs in her system specifically oxycodone, Xanax, T.H.C., and Hydrocodone, see exh (A) Trial Transcripts -1513, 16/24, and Trial Transcripts . 1514, 1/22 testimony of government witness Jared Becknell (coroner) (D.O.C. 287). Moreover, exh (A) (Grand Jury Transcripts)p. 24, 16/24 , reflects government counsel making reference to broad application to the statue regarding drug overdose cases not being used very often in reference to grand juror #46, exh (A) Grand Jury Transcripts p. 22, 23/24, and p.23, 1/23 there was confusion regarding application of the drug statute with the purported overdose, and despite **NO AUTOPSY** being performed it was still falsely alleged that an autopsy was performed, exh (A) Grand Jury Transcripts p.7, 24/25, Grand Jury Transcripts p.8, 1/3. Further, the discussion of law regarding cause of death in overdose drug investigations relating to federal courts interpretation of state law is a

matter of binding state statutory interpretation. See: <u>Johnson v. United States,</u> 130 S.Ct. 1268 (2010) (Federal courts interpreting elements of state statutes are binded by state courts highest statutory, and precedent state law interpretation of its statutes elements). The matter of whether Patty Smallwood's cause of death was a drug overdose is a matter of Kentucky statutory medical examiner's law, and the basis of an adequate autopsy performed thus the Grand Jury's instructions regarding the overdose or lack thereof is a material substantive procedural defect resulting in actual prejudice. See exh (A-page 7) attachments.

The Grand Jury's independence was breached, and prejudice resulted from the unlawful scheme to secure a tainted indictment based upon bias fabrications, and prosecutorial misconduct in violation of the Grand Jury clause. The Grand Jury was intentionally falsely informed that Patty Smallwood's boyfriend Bill Stanley never parted company with her after allegedly receiving the oxycodone pills from petitioner Terry Smith, but the trial testimony of Bill Stanley indicates the assertion to be False, because Bill Stanley testified under oath that after receiving the oxycodone pills from Mr. Smith, Patty Smallwood departed the Smith residence [b]efore him. See exh (B) attachments, Trial Transcripts. Page 1486 16/25. See: <u>United States v. Rice</u>, 90 Fed. Appx. 921, 200 (6th Cir. 2004) ("Grand Jury misconduct could warrant dismissal wherein misconduct is widespread or extraordinarily serious"). A federal courts authority to dismiss an indictment stems from its supervisory powers. See: <u>United States v. Williams</u>, 504 U.S. 36, 46 (1992) (Footnote 6, discussing standards of behavior for prosecutors (and others) as set forth in the United States Code 18.1623(criminalizing false declarations before Grand Jury); and 18 U.S.C. 1622 criminalizing subornation of perjury)). Nevertheless, petitioner has set forth substantial grand jury violations not subject to Fed.R. Crim.P.52 (a), because allegations are not of technical [N]ature, prohibited by criminal statutory prescribed law, and extraordinary. Moreover, prejudice has ensued by the reality that without the above

described conduct the Grand Jury would not have indicted petitioner for the distribution resulting in Patty Smallwood's but-for causation overdose or the conspiracy charge against the petitioner's wife Gerry Smith. Further, counsel should have requested examination of instructions, and moved for dismissal of indictment based upon the above extraordinary circumstances. See: <u>United States v. Weathers</u>, 493 F. 3d 229,237(D.C. Cir. 2007) (Counsel's failure to challenge counts against defendant as multiplicities and unreasonable because not based on reasoned tactical decision). See: 18 U.S.C. 1621 elements of perjury (1) oath, (2) intent, (3) falsity, and (4) materiality, and 18 U.S.C. 1623 (discussing perjury before court, or Grand Jury of United States). See: In Re Cudahy, 294 F. 3d 947, 951 (7th Cir. 2002) (discussing certain ministerial records not covered by Rule 6(e) of secrecy where in Grand Jury instructions determined ministerial in nature). Fed.R.Evid. 201(c) (2) Request but-for causation Grand Jury instruction (see: Grand Jury Confusion) (Transcripts.p.23, 1/25) (exh (B) attachments).

On August 21, 2013 simultaneous raids were conducted by several police agencies on 2 homes of the petitioner. The primary home was in Manchester Ky and the secondary home was In Berea Ky. During those raids 10 collector guns were seized from the Berea residence 60 miles away from the main residence at Manchester. Some of those collector guns had been owned by the petitioner's wife for over 40 years. Nine of those guns were locked in a safe and one pistol was in a bedroom nightstand. The petitioner's wife Gerry Smith possessed a Ky Concealed weapons license at the time of the raid. Due to a previous conviction the petitioner Terry Smith was not allowed to possess a gun. Detective Richard Dalrymple stated to the grand jury that the petitioner Terry Smith personally moved those collector guns to the Berea residence (exh (A) Grand Jury Transcripts page 10) the agent also stated that the petitioner had previously threatened people with guns. During the petitioners trial there was no testimony from anyone who stated they had been threatened with those guns by the petitioner or his wife.

D.E.A agent Dalrymple did stated to the grand jury that the petitioner's wife was not prohibited from owning a firearm. He did not tell the grand jury that the petitioner's wife Gerry Smith possessed a Kentucky concealed gun permit. See (exh (A). grand jury transcripts page 10 line 18).

Reference Exhibit (A) Grand Jury Transcript dated 12-19-13
Exhibit (B) Grand Jury Transcript dated April 3, 2014

1. Detectives stated during trial they had investigated the Smiths for 2 years. Several years of tax returns were seized during the raid of the Manchester residence. Nevertheless, agent Iain Dalrymple denied having any knowledge that the Smiths had any source of a legitimate income. See: Exh (E) Evidence list enclosed (Listing several years of tax returns).


**Exhibit B, Grand Jury Transcripts Page 12 Line 23-25**
**Testimony of Iain Dalrymple Lexington Ky. As Follows:**

Q. all right, to your knowledge did Terry and Gerry Smith have any legitimate source of income other than the distribution of Oxycodone
A. I have no knowledge.
Comments were made by the Grand Jury asking if in his opinion those guns were purchased with proceeds from the sale of Oxycodone
Exh (B) page 13
Q. are those guns consistent with what you see from street level distributors
A. No Sir, they are not.
(2) Exhibit (B) Page 13 lines 17-22
Perjury was presented to the Grand Jury stating records were found with guns at the Berea residence.
Q. ok and were controlled substances recovered or records recovered from Terry and Gerry Smith
A. Records, yes sir

Q. Allright, and the firearms recovered from the same residence
A. Yes, sir
**This statement of Iain Dalrymple to the grand jury was false. Mr. Dalrymple led the grand jury to believe records of drug activity were discovered at the Berea residence with the collector guns.**

**At trial on cross by attorney Stephen Charles, concerning the raid on Berea home Mr. Dalrymple was ask;**
Q. and you found no records, whether computerized or otherwise indicating drug activity
A. NO SIR
**SEE (TRIAL TRANSCRIPTS PAGE 1712 LINES 3-5) STATES; FOUND NOTHING ILLEGAL DURING RAID ON BEREA RESIDENCE.**

It is <u>clear</u> that Mr. Dalrymple committed **<u>perjury</u>** before the Grand Jury to secure a false bias and illegal indictment against the petitioner and forfeiture of the collector guns owned by the petitioner's wife Gerry Smith.

## <u>Please Take Special Notice Of The Following</u>
Government witness Betty Tipton testified during the petitioner's trial; she makes an affidavit stating that she did commit perjury against the petitioner Terry Smith during trial because of threats made to her by detectives Richard and Iain Dalrymple. She also states that she was specifically directed to give perjured testimony against the petitioners wife Gerry Smith stating that (she) Betty had seen Gerry Smith with large sums of cash and guns. Miss Tipton states she was nervous and forgot to recite her script before the trial jury. Nevertheless, her statement reaffirms the allegations by several witnesses of official misconduct by detectives Richard and Iain Dalrymple, which is not unrealistic considering their actions and testimony before (2) Federal Grand Jurys showing continuous testimony of fraud, deception, and

perjury against the petitioner Terry Smith and his wife Gerry Smith to obtain an illegal indictment and illegal conviction.
See: exh (affidavit Betty Tipton)

**Please take Judicial Notice**
Fed.R. Evidence 201(d) and 201 (c) 2
Petitioner request F.B.I investigation pursuant to 18 U.S.C. section 1621, 18 U.S.C. section 1622 and section U.S.C. 1623

*Terry Smith* 11-1-2017

Further accounts of PERJURY and official misconduct by Richard and Iain Dalrymple as follows;
Testimony of Richard Dalrymple
(3) Agent Richard Dalrymple led the Grand Jury to believe SOME book keeping records were confiscated as evidence during the raids of the petitioners home.
BY GRAND JUROR #17- See Exhibit (A) Grand Jury Transcript page 12 lines 10-16) As Follows;
Q. you said that Gerry Smith, the wife kept, she took care of all the financial transactions. Did she keep. Did they keep written records of all this?
AGENT RICHARD DALRYMPLE
  A. We have evidence that they did. However, by the time we searched them those records "for the most part, no longer existed.

**PLEASE NOTE**
No records of ANY amount were produced during trial showing ANY evidence of book keeping or illegal drug activities as described to the Grand Jury by agent Richard Dalrymple. Both agents Richard Dalrymple and Iain Dalrymple used FALSE and deliberate misleading

statements to the Grand Jury to obtain a Bias and illegal indictment against the petitioner Terry Smith and his wife Gerry Smith.

During trial, agent Richard Dalrymple ADMITTS several times to the trial jury that NO evidence of ANY kind was found during the raids of the petitioners homes showing ANY EVIDENCE of illegal drug activity. However, both agents led the Grand Jury to believe otherwise.

Q. (1) No records of drug amounts, weights, money owed or anything of drug nature.

    ANSWER: NO sir, (Trial Transcripts page 1439 L-12)
    ANSWER: NO----(Trial Transcripts page 1439 L-15)

Q. (2) No audio or video of any illegal drug deals

    ANSWER: NO—(Trial Transcripts page 1447 L-22)

Q. (3) Not conducting any illegal activities

    ANSWER: NO—(Trial Transcripts page 1440 L-6)

Q. (4) NO receipts of anything showing out of state travel

    ANSWER: NO—(Trial Transcripts page 1450 L-19)

Q. (5) No stacks of cash

    ANSWER: NO—(Trial Transcripts page 1450 L-21)

Q. (6) Didn't find discarded pill bottles or anything of that nature

    ANSWER: NO—(Trial Transcripts page 1450 L-24)

Q. (7) Nothing drug related

    ANSWER: NO SIR –(Trial Transcripts page 1467 L-4)

Agents Richard and Iain Dalrymple's reference to records of illegal drug activity being seized during the raids of the petitioner's homes was false. Agents DELIBERTLY and KNOWINGLY presented those FALSE material allegations to the Grand Jury in order to secure a tainted and illegal indictment based on Bias fabrications and prosecutorial misconduct in violation of the Grand Jury Clause perjury before court or Grand Jury of the United States
See; 18 U.S.C. 1621, 1622, 1623

Testimony; Richard Dalrymple, Exhibit A. Grand Jury Transcripts page 6 lines 16-24

**A-** It was on the 9th then they went home that night to their trailer which they also rented off Terry Smith and Patty Smallwood took a portion of the medicine that she was prescribed and overdosed on it and died that night and her husband or boyfriend was with her the entire time. So that's how we know that it wasn't something else. The toxicology supports our assertion that she died of an oxycodone overdose. Actually I think it's a poly drug overdose because they got XANAX prescribed down there also. **A COMBINATION OF THE TWO.**

(4) Obvious deception and perjury was presented to the Grand Jury deceiving them into believing that Patty Smallwood died from the medication that was prescribed to her from a trip to a Georgia pain clinic doctor, which the petitioner is accused of sponsoring for the deceased Patty Smallwood. The detective falsely stating the results of the toxicology report to the Grand Jury. Stating Miss Smallwood died from an overdose of a "combination of the two" referring to oxycodone and Xanax. And also, again, falsely stating that Miss Smallwood overdosed on a LETHAL level of Oxycodone and Xanax. The very important significance in falsely stating that Miss Smallwood died of ONLY these (2) drugs is because those are the types of drugs which Smallwood was prescribed by the Georgia doctor which the petitioner was also accused of sponsoring Smallwood to attend shortly before her death.

The toxicology report NOR the death certificate listed Miss Smallwood as having a lethal level of oxycodone and Xanax in her system as the detective stated to the Grand Jury. The detective's statement was false. The death certificate lists Smallwood's death as a Combined drug intoxication. The toxicology report does list Oxycodone, and Xanax but also lists several other types of drugs in Smallwoods system. The detective falsely testified, mislead and deceived the Grand Jury when they never told the Grand Jury of the

several other types of drugs in Smallwoods system. The agent knowingly committed perjury when he stated Smallwood died from (ONLY) the drugs she received from the Georgia doctor. Falsely stating the results of the toxicology report and the coroners reported cause of death. Deceiving the Grand Jury and never telling them of the other drugs in Smallwoods system that were a contributing factor to her overdose death.

Testimony, Richard Dalrymple Exh A, Grand Jury Transcripts page 7 lines 24-25 continued to page 8 of Grand Jury Transcripts.

Perjury

Q. and the Autopsy or the cause of death on the death certificate for Patty Smallwood is?

A. I believe it says Poly Drug Overdose meaning there is more than one drug than oxycodone. She had a lethal level of oxycodone and Xanax in her system.

Q. and you indicated that Patty Smallwoods husband was with her throughout this time. He has given a statement.

A. yes, his name is Bill Stanley and Bill has been completely forthcoming about this, yes.

Perjury Continues

(5) The petitioner Terry Smith is the first person and first case in Ky to be charged with distribution of drugs resulting in a death Without an autopsy being performed on the victim to show the actual cause of death see (exhibits news reports). It was insinuated to the grand jury that an autopsy had been performed was never corrected, leading the grand jury to believe an autopsy had been performed. This in turn, confirmed the false testimony and allegations of the detective which testified that Smallwoods death was a result of an overdose of oxycodone and Xanax. Those are the (2) types of drugs

Smallwood received from the Georgia doctor which officials state Ms. Smallwood was sponsored to attend by Smith. The detective never told the grand jury about the other different types of drugs in Ms. Smallwoods system. The toxicologist testified each individual drug listed in Ms. Smallwoods system was a <u>contributing</u> factor to her death.

The following is testimony from Clay County Coroner Jared Becknell and testimony of Dr. Michael Ward toxicologist, stating results of death certificate and cause of death, as combined drug intoxication. Never listing any certain drug as a cause, only as a contributing factor. Please refer to argument (one) of this motion. Toxicologist and government witness Michael Ward testifies to five different drugs in Ms. Smallwoods system, never listing any certain drug as a result of death as the detectives continuously and falsely testified to the Grand Jury.

Jared Becknell (Clay County Coroner) also government witness testified that the cause of Patty Smallwoods death as stated on her death certificate is that she died from; combined drug intoxication-specifically ALPRAZOLAM, oxycodone, THC, and Hydrocodone. Mr. Becknell never stated any certain drug as an independent cause of Smallwoods death. (trial transcripts page 1516)


<u>Becknell- Cross by attorney Edwards.</u>
Trial transcripts page 1519 L-1-2 and trial transcripts pg 1519 L 18-25
Q. okay and what you certified on the death certificate which they put in as exhibit 10, is the combined drug intoxication
A. yes, sir
Q. you're not a toxicologist
A. no sir
Q. okay, so you cant say with any certainty that one thing or the other caused Miss Smallwoods death, but just of the interaction is what you.

A. correct.

Dr. Michael Ward Toxicologist and Government witness testified.
Cross by Attorney Edwards
Q. okay, and I think you indicated that you would agree with the findings that it was a **combined drug intoxication** was the cause of death.
A. yes sir, each of those were a <u>contributing</u> to the overall picture here. (trial transcripts page 1533 Line 15-19).

<u>Testimony</u>
<u>Dr. Michael Ward toxicologist, cross by attorney Edwards Trial</u>
<u>Transcripts pg 1534 Line 7-25</u>
Q. my question to you is can you state to this jury, within a medical certainty, if the only thing present in Miss Smallwoods system was the opiates that it would have caused her death.
A. NO
Q. second, the actual cause of death being this drug intoxication, without an autopsy, can you really even say that that's the cause of death?
A. im looking at those levels, I think that that's not an arbitrary or out of the question cause of death?
Q. I understand that its probable or may be possible that that's what it is. But there are other causes. She could have had a heart attack.
A. yes, sir
Q. okay, can't rule that out as a cause of her death
A. NO, sir
The previous testimony shows False and Misleading testimony was presented to the Grand Jury to obtain an illegal Bias indictment.

Exh B, Page 21 Lines 21-24 and Page 22
By; Grand Juror #52 testimony of Iain Dalrymple
Q. was there anyone with Ms. Smallwood when she took those pills to know that maybe she had pill from other?—Other possible- said that she did, that she just took a bunch of them and "not necessarily just the ones from Mr. Smith"
Mr Dalrymple
A. My understanding is speaking with the witness is that the pills that Patty Smallwood got that she ingested on that evening were the pills from the trip that was sponsored by Terry Smith.

The indictments against the petitioner Terry Smith and his wife Gerry Smith were both achieved by FRAUD. For example, if 5 people stab someone to death and they are caught. Then the investigating officer goes before a grand jury to indict (only) 2 of those people involved. Stating that those 2 people are the guilty party. The officer never informing the grand jury of the other 3 people involved. Because the 2 people named to the grand jury are the (only) people the officer wants to indict. Then, when the grand jury ask the officer if other people were involved in the crime, the officer knowingly diverts his answer. Misleading the jurors, never telling the grand jury of the other people involved in the crime. When this happened the officer committed fraud. This is a prime example of what happed in this case.

In order to get an indictment for distribution of oxycodone causing death. The detective could not let the grand jury know the truth. Which was, that other types of drugs were involved contributing to Ms Smallwoods death.

The toxicology report and the coroner's report listed the cause of Ms Smallwoods death as combined drug intoxication listing 5 different types of drugs as a contributing factor in her death. Those reports never listed one or two specific drugs as the cause of death as the detective falsely stated to the grand jury to obtain an illegal indictment.

The detective in this case continuously and falsely stated to the grand jury that the result of Patty Smallwoods death was "oxycodone" or, at other times he stated "oxycodone and Xanax". The detective knew this was false and material evidence to this case. If this one question which was ask by Juror #52 has of been answered HONESTLY, that answer would have crushed the fabricated theory presented to the grand jury by the detective. Then the grand jury would not have returned an indictment against the petitioner Terry Smith. Grand Juror #52 ask the detective if Ms Smallwood had taken any other drugs before her death "Not necessarily just the ones from Mr. Smith". This was a logical question that deserved an honest answer. The answer should have been YES. Those other drugs which the grand jury ask about were listed on the toxicology report and the coroner's report. However not once were they mentioned to the grand jury by the detective. Deceiving the grand jury into believing that the only drugs listed on those reports as a cause of Ms Smallwoods death was oxycodone and Xanax.

Nevertheless, the actual results from those official documents listed several other different types of drugs which were also in Ms Smallwoods system. No individual drug was listed as a cause of death only as a contributing factor in her death. Those official reports had been deliberately misrepresented to the grand jury throughout the entire proceeding. The detective continued to present a known false theory to the grand jury stating Ms Smallwoods death was a result from (ONLY) oxycodone or (ONLY) oxycodone and Xanax. The detective needed the grand jury to believe Ms Smallwood died as a result from (ONLY) the drugs received from the Georgia doctor which Ms Smallwood visited. This was the only way to falsely indict the petitioner Terry Smith for distributing oxycodone pills which resulted in Smallwoods death.

Detectives stated to the grand jury that Bill Stanley was Patty Smallwoods boyfriend. Detectives continuously stated to the grand

jury that Bill Stanley had given a statement that he was with Ms Smallwood the entire evening after Smallwood supposedly divvy's up the pills with Smith which Smallwood had filled at a local drug store. The reference of Bill Stanleys statement was used to convince the grand jury that Ms Smallwood died from those same pills which she filled at a local drug store, which authorities state was financed by Smith for her to fill. Agents also stated to the grand jury that Smith was Ms. Smallwoods source and sponsor for receiving pills and for her to travel to out of state doctors. However, all those allegations proved to be false during trial and authorities knew they were false even when they were presented as truth to the grand jury. Bill Stanley testified during trial that he was NOT with Ms. Smallwood the entire evening after the pills were divided out, this is opposite of what was told to the grand jury. Stanley testified that Ms Smallwood left the Smith residence before he did which broke the chain of events as to his knowledge of what Ms Smallwood did for a large portion of that evening or who she obtained her pills from (Trial Transcripts page 1486 Line 20). Detectives also told the grand jury that Smith was Smallwoods source and sponsor for pills. However, during trial the detective Richard Dalrymple admits his investigative report showed that he had the knowledge that Ms. Smallwood had been sponsored to pain clinics by multiple sponsors including Eugene Slone and Susanna Fox (Trial transcript page 1454 Line 12). Stanley also admits during trial that Susanna Fox and others had sponsored him and Ms Smallwood to out of state doctors to receive pills. See (Trial Transcripts page 1500-1503).

Government witness and pharmacy tech Jennifer Mathis testified that she had given an earlier statement to detective Dalrymple concerning the activities that were going on when she worked at community drug store. Mathis stated she had cooperated with the D.E.A. in the prosecution of the owners of the drug store which was filling out of state prescriptions illegally. She testified that Sue Fox

brought random people to the drug store to fill prescriptions. That Fox stayed with those people while those prescriptions were being filled. Fox was a known sponsor to the drug store. Mathis testified that Fox was with Bill Stanley at the pharmacy. She stayed with him then Fox paid for Stanleys and Patty Smallwoods scripts. (Trial transcripts pages 1692-1695).

The pharmacy tech testified that she had NEVER seen the petitioner Terry Smith at the pharmacy with any groups of people. He was not known at the drug store to be a sponsor. Richard and Iain Dalrymple devised a scheme to obtain an illegal indictment on a charge that had never been done before in Ky, and they pulled it off. They acquired an illegal indictment on the petitioner by fabricating evidence using false testimony to a federal grand jury and deceiving their intelligence throughout (2) grand jury proceedings.

## ARGUMENT # THREE
## INEFFECTIVE BY FAILURE TO ARGUE CAUSE OF DEATH
## AS HEARSAY EVIDENCE REGARDING OVERDOSE

During trial litigation the Governments theory was that petitioner distributed oxycodone resulting in overdose of Patty Smallwood under but-for causation liability pursuant to 21 U.S.C. 841(b)(1)(c). moreover, during pretrial conference, exh (c) (Grand Jury Transcripts)p.3, 9/13 the parties in particular trials counsel stipulated to the authenticity and admissibility of Ms. Smallwood's death certificate and a post mortem toxicology report while conceding that both items came from the coroner's report of the Clay County Coroner's Office. Nevertheless, trial counsel rendered deficient representation by failure to object to the above mentioned items (D.O.C. 205), and the hearsay testimony of Toxicologist Mike Ward in violation of the Sixth Amendment of the U.S. Constitution confrontation clause, because decedents cause of death was a central dispute during trial despite an autopsy NOT being performed on Ms. Smallwood's body government counsel erroneously

proceeded on a legally defective but-for causation theory. See: Crawford v. Washington, 541 U.S. 36, 59 (2004).

The Sixth Amendment provides in pertinent part that "[I]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him". U.S. Const. Amend. VI. The right extends to state prosecutions through the due process clause of the Fourteenth Amendment. See: Pointer v. Tex, 380 U.S. 400, 403(1965). A pathologist who testifies must be the pathologist who prepares the [A]utopsy report, or if not the preparing pathologist may rely on the report of other experts when rendering their opinion and by limiting the testimony to discussion of the underlying facts, and conclusions. On the report to a non-hearsay explanation for the basis of the testifying expert's opinion. Nevertheless, the central issue of constitutional concern is that the Clay County Coroner Jared Becknell acknowledged that he did not perform an autopsy on the decedent because of her age, obesity, and [b]elief that her death was NOT drug related which he [p]resumed [c]ould have been a [h]eart [a]ttack. See exh (c) (D.O.C. 287), Trial Transcripts page 1521, 1/12; Michael Ward (D.O.C. 287 exh (C)Trial Transcripts.p 1531, 16/25, and (D.O.C. 205) exh 10 & 11(Death Certificate & Toxicology Report) introduced without reasonable objection of trial counsel are prejudicial hearsay, however the cause of death was reasonably in dispute, and their contents were offered for truth of matter tantamount to drawing conclusions about the cause of death and thus said evidence were testimonial in nature. Further, there was no expert medical certainty concluded by Kentucky statutory medical examiner law in the district completed with an autopsy to establish cause of death. See: Johnson v. United States, 130 S.Ct. at 1286(2010) (concluding Federal courts are binded by state law interpretation when examining elements of state law statutes). Further, the cause of Ms. Smallwood's death is a matter of Kentucky statutory law interpretation and thus the government has failed to resort to the requisite categorical analysis implemented by the Supreme Court in Taylor v. United States, 495 U.S. 575, 600(1990).

Petitioner's case is the first of its kind in Kentucky where **No Autopsy was performed on decedent**. See exh(C). <u>United States v. Ignasiak</u>, **667 F.3d 1217**, 1225(11th Cir. 2012) (finding confrontation clause violated by admission of five autopsy reports of patients over defendants objection wherein expert that did not personally perform autopsies of five decedents regarding overdose, and Dr. concluded that she agreed with the conclusion of cause of death of non-testifying experts, nor was it determined experts were unavailable); <u>Smith v. Jenkins</u>, 609 Fed. Appx. 285, 293 (6th Cir. 2015)(concluding counsel provided deficient performance by failure to investigate cause of death before deciding not to pursue such a theory in challenging causation)(citing Bigelow, 367 F.3d at 570)); and <u>Rossum v. Patrick</u>, 622 F. 3d 1262(9th Cir. 2010)(finding petitioner who was convicted of murder was entitled to an evidentiary hearing on sixth amendment ineffective assistance claim because competent attorney would not have conceded that cause of death was Fentanyl and pursued implausible suicide-by-Fentanyl theory without investigating whether autopsy samples were contaminated). Trial counsel should have objected, and requested mistrial/acquittal, and appellate counsel should have objected pursuant to Fed.R.Crim.P.52 (b) Plain error, because the cause of Ms. Smallwood's death was [o]bviously in dispute [b]efore trial, effects substantial rights, and calls into question the reputation and integrity of the judicial proceedings. See exh(c) attachments.

Affidavit from Susie Grubb, stating that her sister Patty Smallwood had foretold of her death with a given expiration date. Patty Smallwood never lived past her predicted date of her death. That affidavit from Susie Grubb was available before trial and was filed in court before sentencing of petitioner.
SUSIE GRUBB'S STATEMENTS OF HER SISTERS REMARKS HAVE NEVER BEEN INVESTIGATED.

## ARGUMENT FOUR
## COUNSEL RENDERED DEFICIENT PERFORMANCE
## BY FAILURE TO REASONABLY OBJECT TO INSUFFICIENCY
## OF COUNT ONE PURSUANT TO FED.R.CRIM.P. 12(b) (3)
## AND FED.R.CRIM.P.7(C)

Trial, and appellate counsel rendered deficient performance by failure to reasonably object to insufficiency of Count One of indictment pursuant to Fed.R.Crim.P. 12(b) (3), and Fed.R.Crim.P.52 (b) as fatally defective by failure to adequately describe the statement of facts, actus Reus, and the correct activity date of the offense in violation of due process of law. Count One provides:

On or about a day in March 2011, the exact date unknown, and continuing through on or about august 22, 2013, in Clay County, In the Eastern District of Kentucky, and elsewhere,

Terry R. Smith

Gerry Smith

Steven Smallwood

Toleman Johnson

Did conspire together and with others to knowingly and intentionally distribute a quantity of pills containing oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. 846

Although the government has clothed the substantive offense of distribution by way of conspiracy theory, it is unconstitutionally plead impermissibly as a continuing offense which violates petitioner's right to notice, and deprives the ability to plead former jeopardy, and or defend against an offense of indefiniteness in violation of the construction of Congress dictates resulting in duplicity by charging a single continuing offense of actual distribution. See: United States v. Mancuso, 718 F. 3d 780, 793(9th Cir. 2013) ("mancuso's duplicity claim with respect to count II, which charged him with a single continuing

offense of distributing cocaine between January 1, 2002, and July 2009, is much stronger. Unlike possession of controlled substances with intent to distribute, it is unclear whether actual distribution may be charged as a continuing offense. This circuit has never addressed directly whether distribution is a continuing offense, although other courts have held that it is not.

For example, the Second Circuit has stated:

Under [21 U.S.C. 841], the term "distribute means "to Deliver", and there term "deliver" means "the actual, constructive, or attempted transfer of a controlled substance". 21 U.S.C.802 (8), (11). The plain language of the statue indicates, therefore, indicates distribution under 841 is not a continuing crime.

Further, the law instead makes each unlawful transfer a distinct offense, and courts resolving the issue have uniformly held that separate unlawful transfers of controlled substances are separate crimes under 841, even where these transfers are part of a continuous course of conduct. See: United States v. Lartey, 716 F.2d 955, 967 (2d Cir. 1983); United States v. Kuehne, 547 F.3d 667, 669 (6th Cir. 2008) (indictment for drug trafficking sufficient because activity dates and drug types protect against double jeopardy); and Valentine v. Konteh, 395 F.3d 626, 631 (6th Cir. 2004)(finding first prong of Russell adequate by indictments setting out the elements, but the multiple, undifferentiated charges in the indictment violated Valentine's right to notice and right to be protected from double jeopardy). The erroneous duplicity in count one prejudices petitioner: (1) duplicity obscures the specific charges, thereby preventing the jury from separately deciding the issue of guilt or innocence with respect to each particular offense and creating uncertainty as to whether the defendants conviction was based on a unanimous jury decision; (2) the duplicity violated petitioners right to notice of the charges; and hinders ability to argue double jeopardy in a subsequent prosecution; and (3) raises the risk of prejudicial evidentiary rulings, and uncertainties in the basis of

sentencing on conviction. See: <u>U.S. v. Savoires</u>, 430 F. 3d 376, 379-80 (6th Cir. 2005) (count of indictment combining use and carriage of firearms and possession under 18 U.S.C. 924(c) into offense duplicitous because "separate and distinct crimes".

## VARIANCE

Further, the practical effect of the variance wherein petitioner tried on a different charge than that is in the original indictment, the variance must be considered a constructive amendment and thus be automatically reversible on appellate review. See: <u>United States v. Randall</u>, 171 F. 3d 195, 203-04 (4th Cir. 1999)(constructive amendment when indictment alleged use of firearm in distribution of controlled substance but proof at trial showed gun used while intending to distribute, not during actual distribution). See: <u>United States v. Weathers,</u> 493 F. 3d 229 (D.C.Cir. 2007) (counsels failure to challenge indictment on multiplicity grounds was ineffective assistance). See: <u>Hamling v. United States</u>, 418 U.S. 87,117 (1974) (discussing sufficient factual description necessary to inform accused of specific offense) (citing <u>U.S. v. Hess</u>, 124 U.S. 483, 487 z91888)); and <u>Russell v. United States</u>, 369 U.S. 749, 764 n.9 (1962) (holding indictment must do more than cite the language of criminal statute).

Further, petitioner has additionally suffered a variance regarding count one of the indictment, although pled like a continuing offense the count charged distribution, but the government unlawfully supported the offense with evidence of conspiracy to possess with intent to distribute, which is a totally separate, and distinct offense). See: <u>United States v. Randall</u>, 171 F. 3d 195 (4th Cir. 1998)(finding fatal variance wherein government charges on offense, but unlawfully attempts to sustain charge with evidence of separate and distinct offense). Moreover, all of the evidence, and testimony relied on to sustain conviction on count one, conspiracy to distribute, was really evidence of conspiracy to possess with intent to distribute, which is a totally different offense from what petitioner Smith is charged with,

constituting a fatal variance pursuant to fed.R.Crim.P. 7(c) (2). See: Garner v. Louisiana, 368 U.S. 157 (1961)(we hold that the convictions in these cases are so totally devoid of evidentiary support as to render them unconstitutional under the Due Process clause of the Fourteenth Amendment. As in Thompson v. Louisville (U.S.) supra, our inquiry does not turn on a question of sufficiency of evidence to support a conviction, but on whether these convictions rest upon any evidence which would support a finding that the petitioner's acts caused a disturbance of the peace. In addition, we cannot be concerned with whether the evidence proves the commission of some other crime, for it is as much a denial of due process to send an accused to prison following a conviction for a charge that was never made as it is to convict him upon a charge for which there is **NO EVIDENCE** to support that conviction).

## ARGUMENT FIVE
## INEFFECTIVE COUNSEL BY FAILURE TO REASONABLY OBJECT TO PROSECUTORIAL MISCONDUCT IN OPENING, CLOSING AND REBUTTAL STATEMENTS

Trial, and appellate counsel rendered deficient performance by failure to reasonably object to improper prosecutorial remarks in direct, opening, closing, and rebuttal, and move for mistrial, or raise the issues pursuant to Fed.R.Crim.P.52 (b) under plain error. Counsel or court did not request curative instructions.

The following instances of improper remarks, or prosecutorial appeal to jurors to act as a conscience for community, and intention to inflame the passions of jurors:

## Direct Examination
## Rose Marie Senters

Trial Transcripts P. 1598, 16/25 exh (e)

"Q: when did you finally get clean?

A: about 2011. Danny died in 2011. That was a big eye opener. And then really what really got me to kick it, I was in a real bad car wreck in 2013. God seen to give me another chance at life, and I took it. I mean, I don't do drugs any more. I go to church, and I got a wonderful life now.

Q: you said Danny died in 2011. I know this might be difficult. What did Danny die from?

A: I was in the hospital then. And to my knowledge, it was an overdose.

## OPENING STATEMENT

(1) Trial Transcripts.P. 1360, 12/17, exh (e), Attorney Dotson informed the jury of ten firearms seized from search warrant despite any witnesses to corroborate that firearms were connected to instant offense; the statement was designed to inflame, and prejudice jurors despite government counsels awareness of the firearms being seized from a legally secured safe.

## CLOSING STATEMENTS OF ATTORNEY DOTSON

(2) Trial Transcripts.P.1826, 15/17, EXH (e), Attorney Dotson falsely stated "you've heard testimony how these drugs lead to other crimes, as people steal and commit other acts as a means to help keep up their addiction", Not One witness testified to engaging in theft as a result of Mr. Smiths alleged oxycodone distribution, nor was evidence admitted to substantiate Attorney Dotson's comment; (3) Trial Transcripts .p. 1830, 9/17, exh (e) Attorney Dotson commented on evidence not supported by the record or stated a personal opinion as "what I'm talking about are the firearms that were located in the Berea residence. Ask yourself, is

it odd that someone would take something as personal and valuable as firearms and keep them in a location over an hour away from where they live, from the primary residence? Ladies and gentlemen, I would submit to you that the evidence suggests that these firearms were in Berea because the Smiths thought the police wouldn't find them if they were not there at their home.";
(4) Trial Transcripts.p. 1841, 9/15, exh (e) Prosecuting Attorney Dotson gave opinion that Angela Smith consumed oxycodone and Xanax despite Angela Smith NOT specifically asserting that she consumed oxycodone, however this passage is based in part on speculation, and lack of circumstantial evidentiary corroboration of conspiracy; (5) Trial Transcripts.p. 1842, 1/15, exh (e) indicates prosecuting Attorney Dotson commenting on evidence not in the record by informing jurors that Gerry Smith cheated urinalysis test to get oxycodone pills to give them to codefendant Terry Smith for distribution despite the fact that the government failed to provide any evidence of the assertion; (6) Trial Transcripts . P. 1846 15/25, exh (e) "now, the defense will argue to you that Gerry Smith was the one that gave the combination to the safe. Not Terry. That's true. But that doesn't mean Terry didn't know the combination of the safe. Again, Terry Smith was smart, and Terry Smith had been preparing for this. Terry Smith knew how to insulate himself, and he knew that the police were going to come. That's why the guns were in Berea in the first place. He's not going to tip his hand to the police and tell them the combination to the safe so that they know he has access to them: (7) Trial Transcripts .p. 1832, ¾, exh (e) "But you also have people like Rose Senters, someone who lost her husband to an overdose"; and (8) Trial Transcripts.p. 1886, 11/25 exh (e) "But when he was telling us about how he single-handedly rewrote the laws in Kentucky about the proper methods to investigate death investigations or the proper means to go about death

investigations, he made sure that we all knew what that agenda was.

He said he wanted to use the word autopsy in the law. In other words, he wants an autopsy in every single death investigation. Didn't matter what it was. Why would he want that/ because that's his profession. That's what he does. So it keeps him in business. So it keeps his colleagues in business. That's what he did of his whole career.

So to Dr. Nichols, if someone were shot point—in broad daylight, point blank right between the eyes and a hundred people saw it, he still thinks that there should be an autopsy done to determine the cause of death." Prosecuting Attorney Dotson committed inflammatory remarks regarding Petitioners specialist testimony that an autopsy was necessary to determine the cause of Patty Smallwood's death to overshadow the government's complete lack of evidence regarding cause of death which was in dispute. Counsel failed to request a curate instruction, and court failed to provide any, exh (e) Trial Transcripts.p.1843, 1/3; p. 1844, 20/24; and p. 1846, 9/13; exh (e) p. 1843, 1/3, no witness ever testified that Terry Smith ever sold any pills he obtained by prescription himself in April of 2012 in order to help maintain the supplies wherein no evidence was presented; exh (e) Trial Transcripts. p. 1844, 20/24, prosecutor mischaracterized witness testimony from (they thought they saw Terry Smith in possession of firearms) to Gary Nantz, and Brandon Stanley witnessed Terry Smith in possession of firearms); exh (e) p. 1846, 9/13, Asked jury to draw conclusion that guns owned by GERRY SMITH actually belong to Terry Smith, wherein no evidence of such presented.

## PROSECUTION REBUTTAL

(9) Trial Transcripts . p. 1882, 22/24, exh (e)  Prosecuting attorney Dotson reference hearing testimony of Christopher Gregory to jury knowing the testimony was false, because pre-trial DEA-6, indicates Gregory alleged he got ten oxycodone pills at a time from Terry Smith, and sold them in Smiths Trailer Park, however during trial Gregory falsely accused GERRY SMITH of the incident. The above are numerous instances of improper opinion, unsupported assertions, and inflammatory remarks designed to prejudice petitioner's rights to a fair trial wherein defense counsel failed to reasonably lodge an objection, and request a curae instruction resulting in cumulative error in violation of the 5th Amendment which hampered petitioner's right to a fair trial. United States v. Galloway, 316 F. 3d 624, 632-33 (6th Cir. 2003)(Prosecutors comments about his personal experience trying other cases involving drug mules improper); Hamblin v. Mitchell, 354 F. 3d 482, 495 (6th Cir. 2003)(Prosecutors reference to repeated blows to victim improper because evidence only showed one blow); and also United States v. McAllister, 693 F. 3d 572, 585 (6th Cir. 2012)(court considers prosecutors remarks were improper and whether they prejudiced defendant); and Unites States v. Boyd, 640 F. 3d 657, 670-71 (6th Cir. 2011)(prosecutors improper remarks may justify reversal if flagrantly improper, and evidence not overwhelming). See: exh (e) attachments

## ARGUMENT # SIX
## INEFFECTIVE BY FAILURE TO REASONABLY OBJECT TO ERRONEOUS JURY CHARGE REGARDING SENTENCE COURT CONSIDERED IMPOSING

Trial, and appellate counsel rendered deficient performance by failure to object to erroneous jury charge as a matter of law, request mistrial, or seek plain error review pursuant to Fed.R.Crim.P. 52 (b). Moreover, petitioners jury charge, exh (f), Transcript.p.5, 17/21, the district court committed clear error by providing the following defective instruction; "you are the triers of fact. That's not my job. And in considering this case, you're not even to think about any punishment that might result in this case". Further, sixth circuit precedent requires the approach that the jury can provide insight into the community's view of the gravity of the offense. See: United States v. Colins, no.15-3236 (6th Cir. June 29, 2016) ("when establishing the sentencing commission, congress directed it to take "the community view of the gravity of the offense" into account when crafting appropriate criminal sanctions) see: 28 U.S.C. 994 (c) (4). See: Brown v. United States, 167 F. 3d 109 (2d Cir. 1999) (appellate ineffectiveness when attorney failed to challenge trial courts erroneous instruction to the jury as to the governments burden of proof); and Sanders v. Cotton, 398 F. 3d 572, 584-85 (7th Cir. 2005) (counsels failure on appeal to challenge jury instructions improperly stating prosecutions burden of proof was ineffective assistance because reasonable probability that appellate court would have ordered a new trial).

## ARGUMENT # SEVEN
## COUNSEL RENDERED DEFICIENT PERFORMANCE BY
## FAILURE TO OBJECT TO COURTS DEFECTIVE PROCEDURAL
## REQUIREMNETS PURSUANT TO
## 21 U.S.C. 851 (b)

Trial, sentencing, and appellate counsel rendered deficient performance by failure to object to district courts deficient procedural requirements pursuant to 21 U.S.C. 851(b). Appellate counsel was required to raise this issue pursuant to Fed. R.Crim.P. 52(b) Plain Error. During pretrial proceedings government counsel filed notice (D.O.C. 193) 01/18/2015 of the intention to seek enhanced penalty's pursuant to 21 U.S.C. 851 for possession of controlled substance 1st degree, Manchester, KY, Docket no: 01-cr-00095, attached exh (9) PSR p. 8, para 37. Nevertheless, the district court committed reversible error by failure to follow the requirements of 21 U.S.C. 851 in petitioner Smiths case when it did not ask defendant if he affirmed or denied prior conviction and did not inform him that he had to raise any challenge to a prior conviction before the sentence was imposed. See: United States v. Rodriguez, (no.15-50096) (9th Cir. March 14, 2017) (holding that the district court failed to comply with 21 U.S.C. 851 (b) when it did not ask the defendant if he affirmed or denied the prior convictions and did not inform him that he had to raise any challenge to a prior conviction before the sentence was imposed, the panel concluded that the error was not harmless. The panel wrote that two additional procedural defects warranted remand: the district court appears to have been uncertain of its responsibilities under 851 as the sentencing hearing unfolded, and it is unclear whether the district court used the appropriate standard when ruling on the merits of the 851 issues before vacating, and remanding for resentencing). See: Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (Attorney who failed to object to application of 21 U.S.C. 851 enhancement that was filed after jury was empaneled provided ineffective assistance; when "an attorney fails to

raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands); and United States v. Reinhart, 357 F.3d 521, 530-31 (5th Cir. 2004)(counsels failure on appeal to raise trial courts sentencing error was ineffective assistance because error increased sentence by 5 years); and also Glover v. United States, 531 U.S. 198, 202-04 (2001)(6-to- 21 month increase in petitioners sentence, allegedly caused by defective performance of defendants counsel, was prejudicial because it was sufficiently significant to render defendants trial fundamentally unfair). Moreover, the error significantly impacts count one, and count two as it appears on the PSR, and court applied 21 U.S.C. 851 to both counts, see attached exh (9) PSR, and Addendum at 12. , para 60.

## 6th Amendment violation of the U.S. Constitution:

Trial, and appellate counsel rendered deficient performances by failure to object to alleged Kentucky possession conviction not being categorically qualifying prior conviction.

A prior felony conviction under 21 U.S.C. 851 constitutes a deficient act which falls below an objective standard of reasonableness because the prior conviction is not punishable as a felony under FEDERAL LAW. Movant was prejudiced by counsel s failure to object because the district court judge erroneously relied on this prior conviction to impose a sentence above the otherwise applicable statutory maximum of 20 years on count two. Additionally, the district court judge erroneously relied on this prior conviction to impose a statutory minimum sentence of life imprisonment on count one. It is well established that a prior felony conviction must be punishable as a felony under federal law (the controlled substance abuse act) in order to sustain an enhancement under 21 U.S.C. 851.

Petitioner, demands resentencing without application of 21 U.S.C. 851 on both counts one, and two based upon double jeopardy principles. See exh (9) attachments.

## ARGUMENT # EIGHT
## INEFFECTIVE BY FAILURE TO OBJECT TO
## ANGELA SMITH TESTIMONY AND SHOW PERJURY

Trial and appellate counsel, rendered ineffective assistance of counsel by failure to reasonably object to Angela smith's testimony and failure to demand production of her statements pursuant to Fed. R. Crim. P. 401 through 404, wherein, any allegations of petitioners coconspirator Gerry Smiths attempts of fraudulently obtaining oxycodone pills Nov. 28, 2011, and placing petitioner in the parking lot of the medical facility was not In the furtherance of the conspiracy, and the government presented no evidence to corroborate its speculation as to what Mrs. Smith was doing with her prescriptions, see: Rice v. Marshall, 816 F. 2d 1126, 1130 (6th Cir. 1987)(attorneys failure to object to evidence that the defendant had a gun during rape was ineffective assistance where defendant was previously acquitted by a prior jury of the gun charge); Huges v. United States, 258 F.3d 453 (6th Cir. 2001)(counsels failure to request removal of juror who stated "I don't think I could be fair" was ineffective assistance); Goodman v. Bertrand, 467 F. 3d 1022, 1023-31 (7th Cir. 2006)(counsels failure to subpoena crucial witness, request mistrial based on prosecutors improper closing argument, impeach credibility of prosecutions witnesses, and avoid question which

revealed defendants previous armed robbery convictions was ineffective assistance due to cumulative effect).

Petitioner, has yet to be provided with a prior written statement of Angela Smith, thus it is apparent that defense counsel failed to demand them. Fed.R.Crim.p.26.2. further, Trial Transcripts.p. 1605, 1/21, exh (h) provides:

A: They're my brother-in-law and sister-in-law.

Q: how is that, if you would explain to the jury?

A: I'm married to Terry's brother Larry.

Q: you're married to Larry Smith; is that correct?

A: Yes.

Q: and why are you incarcerated?

A: on a conspiracy case to distribute oxycodone.

Q: and have you pled guilty in connection with that case?

A: Yes, sir.

Q: and are you awaiting sentencing?

A: Yes, sir.

Q: and who were you involved in that conspiracy with?

A: my husband Larry Smith, and 11 others.

Q: okay. Explain to the jury what you all were doing in connection with that conspiracy to distribute oxycodone.

A: we first started going to Ft. Lauderdale, Florida, to Broward County Pain Clinic to get oxycodone to sell. And then they referred us to a

branch that was opening up in Georgia, which was Georgia Health Associates. So we went down there."

Moreover, this line of questioning is tantamount to evidence of other crimes, and its prejudicial effects outweigh any probative value, or at worst was unrelated. The above line of questioning was designed to associate Mr. and Mrs. Smith with convicted oxycodone dealers by conduct, and relation. See: <u>Elmore v. Ozmint,</u> 661 F. 3d 783, 866 (4th Cir. 2011) (counsel's failure to investigate forensic evidence was unreasonable because conducting investigation is a professional obligation). Angela Smiths testimony was introduced under defective prosecutorial misconduct theory of Mrs. Smith cheating urinalysis to obtain oxycodone to provide to petitioner, despite a lack of evidence AUSA Dotson informed the jury of this, . Trial Transcripts p.1842, 1/15, exh (H) with no objection by counsel or curative instruction. Appellate counsel ineffective pursuant to Fed.R.Crim.P. 52(b) Plain Error, and Trial counsel should have requested a mistrial. See exh (H) attachments

Trial Counsel was ineffective for not EXPOSING perjury of Angela Smith with D.E.A, police reports.

## CROSS EXAMINATION OF ANGELA SMITH

By: Mr. Charles (Trial Transcript Pages 1611-1612)

Q: Miss Smith, you entered a Plea Agreement in this court in the Slone case, which is the reason that you're locked up right now, is that right?

A: Yes Sir, it is.

Q: and the, according to the plea agreement, you admitted to conspiring to distribute a tremendous quantity of Oxycodone that got you to a level 34 initial guidelines, is that right?

A: Yes, Sir.

Q: and you have discussed with your attorney, I'm sure, what the potential sentence is at that level, have you not?

A: Yes, I have

Q: is it eight, Ten years

A: I think it's a little more, I ain't for sure.

Q: You think it's a little more

A: yeah

Q: so, it's a long time

A: yes, sir, it is

Q: and there's a supplement to that plea agreement that says that if you cooperate by testifying and providing information against other people, that the government will consider asking the court to reduce that sentence.

A: they will consider it. You're not guaranteed it.

Q: Oh, I understand they don't guarantee it. But you certainly think that it's to your advantage to come in here and testify and try to get your sentence lowered? Is that a fair statement?

A: that's a fair statement, but my first priority would be coming in here to tell the truth.

Q: excuse me

A: my first priority- that would be what I would hope for. But beyond anything im here to tell the truth.

Testimony of Angela Smith stating events which took place Nov 18, 2011. The day of a raid by officials on Georgia Health and Wellness (TT. Page 1609 line 17-21)

When the DEA came in they questioned EVERYONE. Took their I.D. , our names, where we lived, so forth so on. Then they let us go out of the building. And when we were leaving, Terry was in the parking lot waiting on Gerry.

Also; see (Trial Transcripts page 1613 line 7). He was in the vehicle.

Also; AFFIDAVIT - Gerry Smith - enclosed

The petitioner Terry Smith states the testimony of Angela Smith is totally false. The petitioner states that he was in Kentucky the day of the raid. Angela Smith committed perjury against Terry and Gerry Smith in agreement with the government to be released early from jail or prison. Police and DEA reports will support the petitioner's claim of innocence and show Angela Smith committed perjury against Terry and Gerry Smith and committed fraud on the court with her perjured testimony.

## REPORT OF INVESTIGATION

In a 31 page report on the raid of Georgia Health and Wellness. The report lists all the agencies involved in the raid, ALL THE NAMES OF PATIENTS AND PERTANENT INFORMATION. IT ALSO LIST THE VEHICLES IN THE PARKING LOT. THE PETITIONERS NAME OR VEHICLE IS **NOT** IN THIS REPORT.

## SYNOPSIS  (Taken from Front Page of Police Report)

On November 18, 2011 members of the Atlanta Field Division Tactical Division Squad (TDS), along with the Fayette County Sheriffs office (FCSO), Dekalb County Sheriffs office (DCSO) and Dekalb Police department (DPD), executed a State of Georgia Search Warrant at

49

Georgia Health and Wellness (GHA) 2191 Northlake Parkway, Building 11, Suite 22, Tucker, Georgia 30084. The search began at approximately 11:30 a.m. and concluded at approximately 8:40 p.m.

Entire Report Submitted As Evidence (exhibit   )

According to this 31 page report the raid on the Georgia Clinic started at 1130 am and lasted until 840pm. Angela Smith testified everyone was questioned, interviewed and allowed to exit the clinic. Agents documented the vehicles and individuals at the clinic. Agents were still on the scene equipped with body cameras, vehicle cameras, and news media, when patients were allowed to leave. Present police records enclosed and Camera coverage will show that the petitioner Terry Smith was NOT in the clinic parking lot as Angela Smith testified. Again, the petitioner states that Angela Smith committed perjury against Terry and Gerry Smith and committed fraud on the court to gain a reduction of her prison sentence which she achieved with her perjured statements.

Prosecuting attorneys may not knowingly present FALSE testimony and have a duty to correct testimony they know to be false. See; NAPUE v. ILL. 360 U.S. 264, 269, (1959) and Dow v. Virga.  729F. 3d 1041, 1050 (9th Cir 2013). (Prosecutors knowingly introduction of false testimony and subsequent arguments relying on that testimony improper). See (D.O.C. 126), pretrial order 9-15-2014 demanding disclosure of all BRADY material. See; Sims v. Livesay 970 F. 2d 1575, 1580-81 (6th Cir 1992)(ineffective assistance where counsel failed to conduct an investigation into certain physical evidence that would have undermined the prosecutors theory.

Also: see Brady v. Maryland 373 U.S. 83 (1963)

United States v. Bagley 473 U.S. 667, 682 (1985)

Strickland v. Washington 466 U.S. 668 (1984)

Counsel for the Petitioner was ineffective for not investigating and using police reports to show perjury which would have resulted in totally different outcome of petitioners trial.

## ARGUMENT # NINE
## INEFFECTIVE ASSISTANCE BY FAILURE TO INVESTIGATE,
## AND OBJECT TO MATERIALY FALSE/PERJURED TESTIMONY

Ineffective trial, and appellate counsel by failure to object to Brady violation pursuant to Fed.R.Crim.P. 52 (b) wherein violation constituted structural discovery violation. Prosecuting attorney Dotson permitted witness Christopher Gregory to commit perjury in the adversarial proceeding of Terry Smith, wherein the government held obligation to reveal perjury to court, and defense. Furthermore, attorney Charles, attorney Edwards, Prosecuting attorney Dotson, and DEA Agent Richard, and Ian Dalrymple were all aware of its falsity, however, suppression of this material was prosecutorial, attorney, and investigative misconduct:

Q: you said that one day, you sold some pills for Terry in July or August.

A: um-hmm.

Q: is that 2012?

The court: excuse me. Let me have the witness answer yes or no instead of um-hmm. I want to be sure we get your correct response.

The Witness: Yes.

Q: in 2012?

A: Yes.

Q: and where were you selling these pills?

A: right there in Sibert.

Q: at Sibert Market?

A: no.

Q: where at?

A: right there across from Sibert in the trailer park.

A: yeah.

Q: and how many pills did you sell?

A: a hundred.

Q: A hundred?

A: yeah.

Q: over what period of time?

A: about four hours, something like that.

Q: and you were selling for how much?

A: $50 a piece. $50 a piece.

Q: $50 a piece. $50 a piece.

A: they were hydrocodone 30's

Q: Roxicets?

A: yeah.

Q: and where did you get those?

A: from Gerry.

Q: from Gerry?

A: um-hmm.

See attached, exh (I) Christopher Gregory trial testimony, Trial Transcripts. Page 1555, lines 1/15, Trial Transcripts.p. 1556 lines 1/23. Moreover, exh (I), Trial Transcripts p 1557, lines 14/19 indicates that petitioner's co-conspirators counsel Charles questioned Christopher Gregory utilizing DEA-6 Form of Douglass Dalrymple's interview of Christopher Gregory dated June 24, 2013, however, counsel Edwards failed to expose false testimony. See, exh (I), Trial Transcripts.p. 1557 lines 17/19, "Q: let me ask you this. Do you recall meeting with D.E.A. officers, task force officers and the sheriff in June 2013? A: yes". Defense counsel Edwards rendered deficient performance by failing to cross examine the witness with the available DEA-6 Form dated June 24, 2013, without exposing perjured testimony of Christopher Gregory.

See: page 2 of 3, of DEA-6 Form dated June 24, 2013, clearly indicates "Terry Smith asked Gregory to sell oxycodone pills for Smith; Gregory sold approximately 100 30mg oxycodone pills for Smith; Gregory would return the money for the sale of the oxycodone pills to smith at [h]is residence, or house; Gregory charged $45.00 per pill and returned all the money to Smith. See, exh (I), DEA-6 Form of June 24, 2013. The failure to expose the false testimony, and perjury constitutes constructive denial of counsel at a critical stage of the proceedings. See, United States v. Cronic, 466 U.S. 648, 658-659(1984)("presumption of

prejudice applies when counsel "entirely fails to subject the petitioners case to meaningful adversarial testing, "where counsel is actually or constructively denied during a critical stage of the proceedings, or when there is "various kinds of state interference with counsels assistance); and also Mickens v. Taylor, 535 U.S. 162, 166 (2002)(prejudice presumed where counsel was "denied entirely or during a critical stage of the proceedings). Also, the failure of [d]efense counsel to reasonably investigate, and cross examine governments material witness about perjured, or completely false testimony wherein evidence available to defense counsel constitutes constructive denial of counsel, or clearly demonstrate able cause & prejudice. Brady v. Maryland, 373 U.S. 83 (1963) (...Evidence is material and requires reversal of conviction when there is a reasonable probability that disclosure would have altered the result of trial; a mere possibility is not enough). See United States v. Bagley, 473 U.S. 667, 682 (1985). In such a circumstance, a finding that the error was harmless beyond a reasonable doubt is necessarily precluded. See Kyles v. Whitley, 514 U.S. 419, 435 (1995)(new trial motion based on evidence withheld in violation of Brady cannot be denied on basis that new trial would not have produced different outcome; such violations not subject to harmless error analysis).

Prosecuting attorneys may not knowingly present false testimony and have a duty to correct testimony they know to be false. See Napue v. Ill. 360 U.S. 264, 269 (1959); and Dow v. Virga. 729 F. 3d 1041, 1050 (9th Cir. 2013) (Prosecutors knowingly introduction of false testimony and subsequent arguments relying on that testimony improper). See (D.O.C. 126), pretrial order 09/15/2014 demanding disclosure of all Brady material. See Sims v. Livesay, 970 F2d 1575, 1580-81 (6th Cir. 1992) (ineffective assistance where counsel failed to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that victim was shot at a distance). See exh (G) attachments.

# ARGUMENT # TEN
## INEFFECTIVE ASSISTANCE BY FAILURE TO INVESTIGATE BILL STANLEYS and GARY NANTZ'S UNDISCLOSED COOPERATION AGREEMENT

Trial, and appellate counsel rendered deficient performance by failure to reasonably investigate, and object to the governments <u>Brady</u> violation of Bill Stanley's cooperation agreement. Appellate counsel should have objected pursuant to Fed.R.CRim.P. 52(b).

Trial Transcripts.p. 1492, line 16/25, and Trial Transcripts.p. 1493 L ½, exh (J)

"Q. Have you ever been promised anything from my office in exchange for your testimony here?

A. No, not that I'm aware of.

Q. have you ever talked to the police about whether nor not they intend to prosecute you?

A. I haven't.

Q. nobody's ever made any promises to you about it one way or the other? A. I've asked them.

Q. okay. And nobody's given you assurances? Is that a fair statement?

A. Yeah."

## CROSS EXAMINATION/EDWARDS

Trial Transcripts.p. 1498, 2/25, and Trial Transcripts.p. 1499, 1/1, exh (J) "

Q. Isn't it true Mr. Stanley, that when you got caught with these 29 and a half pills, you were told at that time by Officer Dalrymple that if you would tell that you got those pills from Terry Smith, you wouldn't be charged for them; isn't that true?

A. No, sir.

Q. were you ever charged with those 29 and a half pills?

A. Yes, I was.

Q. have you been—where?

A. According to Unite, that's what I'm charged with. You'll have to ask him. That's the one that arrested me.

Q. if you were charged with those 29 and a half pills and that's what the current charge you have pending is, you said that your charges there had nothing to do with Mr. Smith.

Q. Okay.

A. and the second one doesn't have anything to do with Mr. Smith. It's totally different charges.

Q: but you think the second one is 29 and a half pills?

A. No, sir. I was only charged with one.

Q. the first one was 29 and a half pills?

A. they caught me with 29 and a half pills. I was only charged for one.

See: (statement of Randall Grubb.)

Q. that's the trafficking charge you're talking about:

A. Yes.

See (D.O.C. 126), pretrial order dated 09/15/2014 demanding disclosure of all Brady material. See: United States v. Bagley, 473 U.S. 667 (1995)(holding Due Process violated when prosecution enters into cooperation contracts with witnesses which contents suppressed wherein evidence material impeachment records); see also Kyles v. Whitley, 514 U.S. 419 (1995)(extending the prosecutors disclosure obligation to include evidence in the possession of the police and not known to any prosecutor, Quoting from Giglio, the court stated that "procedures and regulations can be established to carry [the prosecutors] burden and to insure communication of all relevant information on each case to every lawyer who deals with it). See also: Groseclose v. Bell, 130 F. 3d 1161, 1169-70 (6th Cir. 1997) (describing defense counsels "failure to have any defense theory whatsoever" and

"failure to conduct any meaningful adversarial challenge" as "especially appalling" in holding attorney ineffective). Trial counsel should have filed a motion for sanctions, and mistrial. Further, properly impeaching Stanley could have affected the jury's assessment of Stanley's observation of Ms. Smallwood's alleged overdose. Further, trial counsel erred pursuant to Fed. R. Crim.P. 26.2(c) by failure to move court to examine heavily redacted statement to determine if it reasonably related to subject matter testimony. See exh (J) attachments.


Gary and Gina Nantz are former tenants of petitioner Terry Smith. Gary Nantz was a cooperating witness for the government in the petitioner's case. The Nantz's were several months behind on their rent and refused to vacate the Smith's property. In July 2013 the petitioner obtained an eviction notice from the court on the Nantzs. When sheriff's deputies arrived at their residence to serve the eviction notice, they ran Gary Nantz's name through N.C.I.C. and discovered he had a pending criminal warrant in a different county. Gary Nantz was then placed under arrest and lodged in the local jail awaiting transport to the county where the warrant had been issued.

Before Nantz's arrest he had made these statements to neighbors and tenants of the Smith's.: that if he (Nantz) were evicted; ("if it's the last thing I do, I'll take Smith down".) and ("I'll take Terry Smith down if he evicts me".). these accounts of Nantz's threats are also confirmed by witnesses statements along with Nantz's own admission in the summary report of investigator Ric Cawood Exh (RC). While in transit from the Clay County Jail (where Nantz had been lodged) to the Leslie County Jail, Federal agents stop the van transporting Nantz and take him back to the Clay County Sheriff's office. Mr. Nantz was still upset because he had been evicted. He also thought that the petitioner was the one

who informed the police of his outstanding warrant, as stated to investigator Cawood. Nantz was having marital problems and was also upset for the burning of his truck. Officials used Nantzs anger of being evicted and Nantz wanting revenge for the burning of his truck as leverage to obtain a fabricated statement against the petitioner Terry Smith. It is not known of the contents of the deal made with DEA for his perjured statement. Once Nantz cooled off he gave a different story to the investigator Ric Cawood. Interview as Follows;

Mr. Edwards; per your request, we have interviewed individuals in the area of Terry Smith's residence. Written statements have been prepared and each individual indicated they would be willing to sign the statements. Below is a summary of the information provided by each individual that we interviewed.

**Gary Nantz**

**Mr. Nantz stated that he was arrested in July 2013 and lodged in Clay County Jail. On the 14th he was picked up at the jail to be transported to Leslie County Jail. The van was stopped on Highway 421 and he was taken from van and transported back to Clay County Sheriff's office by two federal officers. Upon arrival at the Clay County Sheriff's office, he was taken to a room where Gina Nantz (now ex-wife) was sitting. Gina Nantz had given the officers a list of Gary Nantz's prescriptions and told them that he had gotten them from Terry Smith. The prescriptions were legitimate medications given to Mr. Nantz by his own physician. Mr. Nantz believes that Gina Nantz may have provided the statements as a means to cause trouble for him due to marital problems. He stated that there was no fact or truth to the information provided by Gina Nantz. Mr. Nantz stated that he was told who were questioning him that if he would provide information to seal up Terry Smith that they would take the cuffs off him and he could go home. Mr. Nantz stated that he made no statements and was transported to**

Leslie County Jail where he spent the next 28 days incarcerated. Mr. Nantz stated that he had rented from Terry Smith and done odd jobs around the trailer park. He indicated that his pickup truck had been burned, that he did not know who did it, but that Gina Nantz blamed Terry Smith for it. He denies Terry Smith ever asking him to transport, purchase, or sell drugs. Mr. Nantz indicated he and Terry Smith had a disagreement over rent and that Terry Smith had him arrested by the police. He made some threats at the time but there are no hard feelings toward Terry Smith now. Mr. Nantz stated that he was not aware of Terry Smith's involvement in any drug activities. (Unsure about court involvement).

Because Gary Nantz did make earlier false statements to the D.E.A against the petitioner out of revenge or anger. He had locked himself into an undisclosed deal with the D.E.A that he couldn't back out of. Nantz had to continue his line of perjury during the petitioner's trial to protect himself against his earlier statements of perjury.

Nevertheless, Nantz admitted an undisclosed deal was presented to him by DEA agents (Dalrymple) see; DEA statement of Gary Nantz to DEA Dalrymple. The DEAL between Nantz and the DEA was not brought to the courts attention or the trial attorney's attention. Trial attorney Edwards was ineffective for not questioning Nantz of the deal offer made to him by the DEA or the RESULTS of that deal. Trial counsel was also ineffective for not confronting Nantz with his (3) conflicting statements; (1) made to DEA (2) made to investigator (3) testimony at trial.

Nevertheless, officials played on Nantz's emotions of anger and revenge toward Smith. Both Gina and Gary Nantz gave fabricated statements to officials that day July 15, 2013. Months later when Nantz was interviewed by the investigator Nantz admitted he H=had made threats against the petitioner Terry Smith, but there are NO hard feelings NOW.

An admitted deal was presented to Nantz by agents. That deal was not brought to the courts attention. The attorney was ineffective for not questioning the results of that deal offer with Nantzs previous statement to the investigator which also conflicts with his trial testimony.

Had attorney brought these issues out at trial it would have shown prejudice and perjury on Nantzs behalf toward the petitioner and the trial would have had a different outcome. Strickland v. Washington, 466 U.S. 688 687 80 LEd. 2d.674.104 S.Ct. 2052 (1984)

### Trial Testimony of Gary Nantz

Trial transcripts page 1583 Line 22-24

Q: Have you been promised anything by the United States or Law enforcement in exchange for your testimony here today?

A: NO

Trial Transcripts page 1586 line 8-10

Q: and you didn't make any statements that even if you had to lie, you'd see Terry Smith in prison.

A: No, I did not

Nantz should have been impeached or sent for Mental Evaluation.

Trial Transcripts Page 1582 Line 22

A: I cant remember, like I said my memory ain't right.

Trial Transcripts page 1583

Got memory loss right now. Because I was on life support back in May.

Q: what was that related to?

A: Alcohol overdose.

Gary Nantzs' wife Gina had made very damaging statements against the petitioner Terry Smith and his wife and co-defendant Gerry Smith. Gina Nantz did not testify during trial. The petitioner Terry Smith states that he was present when 2 men from a repo company located in Louisville Ky were at the Nantzs home trying to repossess Nantzs truck. Nantz told the men his wife Gina was gone with friends and she had the keys. The men were told to go get something to eat and Gina would be back by the time they returned and they could have the truck. The men left in good faith but when they returned, Gary Nantz had hid the truck. The repo men were angry and returned several times to try and locate the truck. The Nantzs started hiding the truck behind a local well known drug dealer's home about a 5 minute walk from their trailer. Whenever Gary Nantz was arrested Gina still hid the truck behind the drug dealers home about 100 feet behind his home. The petitioner sates he was in the trailer park with other renters when Gina and two other girls walked past him and headed toward the truck. No longer than it would of took to get to the truck you could see the smoke from the burning truck. It was a pretty sunny day, the fire department and police came. Gina told police she thought that Terry Smith burned the truck. She gained sympathy from police officers since her husband had just been evicted and arrested and her truck burnt. The truck was only hours or minutes from being repossessed as the repo men were looking for the truck, but that story was never told. While the truck was still smoking Gina and another drug addict Terry Sandlin were packing a catalytic converter to the scrap yard next door. Then they sold scrap aluminum from the truck, then when the truck cooled off it was hauled to the scrap yard. One of the girls with Gina that was walking to the truck was Rose Senters. She was also a witness for the government against the Smith's. Rosemary knows the truth of WHOEVER burnt the truck. Gina used this incident to gain sympathy from Nantz and the police and also to help inflame her husband's revenge toward the petitioner Terry Smith. Gina is now Gary's x-wife. I'm sure when he got out of jail he found out a lot of things about Gina.

Terry Smith 11-1-2017

## ARGUMENT # ELEVEN
## INEFFECTIVE ASSISTANCE BY FAILURE TO OBJECT
## TO EXRANEOUS UNRELATED EVIDENCE

Trial, and appellate counsel rendered deficient performance by failure to object to extraneous, and unrelated items of evidence pursuant to Fed. R. Evid. 401 through 404, and raise the issue pursuant to Fed.R.Crim. P. 52 (b). see (D.O.C. 205) exhibit and witness list, following exhibits, 1, 1/21/15 Medical Records, 3, 1/21/15 notebook offered, 6a-j, 1/21/15 prescription bottle label for hydrocodone to Oda Proffitt, 13c, 1/22/15 prescription for diazepam, 12, 1/22/15 photographs of Angel Road search, and 14, 1/22/15 firearms seized from Angel Road search (4 rifles and 6 handguns). Moreover, the admission of the evidence was published to the jury in particular pictures of a safe containing the firearms, and displaying them on a cart for the jury to examine wherein the government failed to produce an nexus to the conspiracy offense. See exh (k) Transcript. P. 1701, 10/20, p.1702, 1/25, and 1704, 11/25, Trial Transcripts.p. 1360, 1/25, p. 1439, 6/15, p. 1467 1/4.

See: Bickman v. Bell, 131 F. 3d 1150, 1157 (6th Cir. 1997) (defense counsels preparation for trial amounted to "total failure to actively advocate his clients cause); Ramonez v. Bergh, 490 F. 3d 482, 488 (6th Cir. 2007) (strategic decisions not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them). See exh (K) attachments.

## ARGUMENT # TWELVE
### Failure to move for dismissal of indictment

Trial, and appellate counsel rendered deficient performance by failure to object to indictments fatal defect in failure to charge cause of Patty Smallwood's death pursuant to Fed.R. Crim. P. 7(c), and Fed.R. Crim.P.12 (b) (3). See <u>Santillana v. Upton</u>, Warden FMC Carswell, and (no. 15- 10606) (5th Cir. Jan. 16, 2017) (reflecting cause of death charged into indictment). Further, the prejudice ensued from the parties' dispute about actual cause of death during trial, exh (L) Trial Transcripts.p. 1534, 1/25 (D.O.C) 287). Moreover, cause and effect is a common sense concept, however the cause would be the actual determination of death, and the effect in this sense would be resulted from, however the government's failure to charge decedents cause of death is tantamount to the tail that wags the dog. See: 6th amendment "right to be informed of the nature and cause of the accusation". See <u>U.S. v. Weathers</u>, 493 F. 3d 229, 237 (D.C. Cir. 2007)(counsels failure to challenge counts against defendant as multiplicities was unreasonable because not based on reasonable tactical decision); <u>Bierenbaum v. Graham</u>, 607 F. 3d 36, 52 (2d Cir. 2010)(counsels concession about the victims probable time of death was reasonable trial strategy because it was consistent with overall theory of the crime); and <u>Dugas v. Coplan</u>, 428 F. 3d 317, 332(1st Cir. 2005)(counsels failure to investigate possible defense was ineffective assistance). See also <u>Washington v. Dendel</u>, 147986 (6th Cir. 2016) (holding counsel ineffective for failure to investigate victim's cause of death). See exh (L) attachments/Bill Stanley admission on lack of proximate cause; see: Transcript.P. 1486, 16/25.
<u>United States v. Martinez</u>, (no. 11-13295)(11th Cir. Sept. 3, 2015) ("because the indictment failed to alleged Martinez mens rea or

facts from which her indictment can be inferred, with regard to the threatening nature of her email, it alleged only that a reasonable person would regard Martinez's communication as a threat. Martinez's indictment does not meet the Fifth Amendment requirement that the grand jury find probable cause for each of the elements of a violation of 875 (c))(citing Elonis v. United States, 135 S.Ct. at 2012 (2015)). See Grand Jury Transcript. P. 23, 1/25 (grand jury) (exh (B) see: definition for proximate cause: "The last negligent act that contributes to an injury."

Further, the grand jury testimony indicates confusion that application of law, because the government failed to provide a sufficient basis of fact (cause) to determine why, or how to apply the statue which is obvious by the governments concession to the statutes broadness, but its broadness does not save the government from its statutorily prescribed, and constitutionally mandated obligation of establishing a basis wherein probable cause of the elements of the violation can be determined from. See: 5th amendment of U.S. Constitution. Further post Burrage under but-for causation probable cause is **NON-EXISTENT.**


## ARGUMENT # THIRTEEN
## INEFFECTIVE FOR FAILURE TO OBJECT TO VARIANCE THEORY

Trial, and appellate counsel rendered deficient performance by failure to object to fatal variance in overdose theory testimony between Grand Jury, and petite jury. See Grand Jury Transcript. Exh A P. 8, 1/3 " I believe it says poly drug overdose meaning there is more than one drug than oxycodone. She has a Lethal level of oxycodone and Xanax in her system" (Richard Dalrymple, DEA), but see trial testimony Trial Transcripts.p. 1514, 13/20

"Q. does it list the drugs involved?

A. Yes, sir.

Q. and what drugs are those?

A. Diazepam, a metabolite of diazepam, alprazolam, THC, which is marijuana metabolite, and hydrocodone or Lortab. And the level of that was 4.67 times the therapeutic range.

Q. was the hydrocodone or –

A. The oxycodone" (testimony Jared Becknell),

see also trial testimony Trial Transcripts.p. 1525, 20/25, Trial Transcripts.p.1526, 1/25, and Trial Transcripts.p.1527, 1/6, "Government witness Michael Ward informed the petite jury that the first positive finding was

(1) benzodiazepine; (2) alprazolam; (3) marijuana; and (4) opiates etc.", see attached exh ( ) reflecting the above testimony.

Further, the petitioner was prejudiced by the variance, and counsel should have requested mistrial on but-for causation defective theory. See: United States v. Lander, 668 F.3d 1289, 1295 (11th Cir. 2012)(holding indictment failed to put the defendant on notice of the crime for which he was convicted, he could not prepare a defense to a scheme to defer and that did not appear in the indictment). When a material variance substantially prejudices the defendant as it did in the instant matter, the variance constitutes reversible error. See: United States v. Williams, 358 F. 3d 956,962-64 (D.C. Cir. 2004) (remanding for a hearing to resolve whether counsel's failure to object to legally inadmissible hearsay was ineffective assistance). Counsel should have requested mistrial. See exh (M) attached transcripts/evidence.

## ARGUMENT # FOURTEEN
## INEFFECTIVE FOR FAILURE TO PROTECT
## FROM REJUDICIAL OVERDOSE TESTIMONY

Trial, and appellate counsel rendered defective performance by failure to object to prejudicial references of Patty Smallwood alleged overdose, and eliciting damaging testimony of same, thus appellate counsel should have objected pursuant to Fed.R. Crim. P. 52(b), and 401 through 404. Exh (N) Trial Transcripts .p. 1361 line 14/23, Trial Transcripts p 1793, line 1/18, Trial Transcripts.p.1457, 3/13, Trial Transcripts.p. 1411 line 2/25, Trial Transcripts.p. 1832, 3/6, Trial Transcripts.p. 1484, 1/25, Trial Transcripts .p. 1598, line 17/25. Further, the above are multiple references of testimony of victims of overdose death not involved in petitioner's case, and references of alleged overdose of Patty Smallwood, however cause of death was disputed at trial making admission of said remarks highly inflammatory, and prejudicial despite the objections. See Chatom v. White, 858 F. 2d 1479 (11th Cir. 1988) (attorneys failure to object to introduction of scientific evidence that resulted in defendants conviction for first degree murder was ineffective assistance). See: United States v. Berry, 624 F. Ed 1031, 1039 (9th Cir. 2010) (claim that evidence used rendered trial fundamentally unfair cognizable under 2255). See attached exh (N) transcripts/ evidence.


## ARGUMENT # FIFTEEN
## INEFFECTIVE COUNSEL FOR FAILURE TO SUPRESS
## FRUITS OF POISONOUS TREE

During Petitioner's trial firearms evidence seized from petitioners second home belonging to petitioners wife, 4 rifles, and 6 handguns, and numerous prescription bottle seized from

their Berea residence was admitted into evidence without objection of counsel despite the items seizure was in violation of 4th Amendment of the U.S. Constitution. Trial, and appellate counsel's performance in omission of requisite objection resulted in prejudice to petitioner's substantive rights by allowing the above cited prejudicial items into evidence during petitioner's jury trial wherein it was clear that the evidence was seized in violation of his 4th Amendment rights of the U.S. Constitution. See attached (D.O.C. 205) (A) at 2 of 2, exh 13a, 13b, 13c, 12, 14, 16, and p. 1 of 2, exh 2, 3, and 6a-j. See Kimmelman v. Morrison, 477 U.S. 144 (1986). The error in that case involved the attorney's unexcused failure to seek suppression of evidence alleged to have been obtained in violation of 4th Amendment right against unreasonable search and seizure. After determining that the attorney's performance was constitutionally deficient, the Supreme Court remanded the case for a determination of whether the defendant was prejudiced by the attorney's error. In its remand, the Supreme Court instructed the lower court to determine whether the Fourth Amendment claim had merit, and if so whether exclusion of the improperly obtained evidence would have affected the result. Nevertheless, petitioner alleges there was no criminal activity connection between the Berea residence and Manchester home. There was no evidence that petitioner stored controlled substances in his residence, or conducted drug related activities at either residence, however, the government failed to produce independent evidence of coo borating investigation. Thus the government has failed to produce independent evidence of firearms, or prescriptions of controlled substances stored at BOTH residences giving an indication of lack of probable cause, or reasonable suspicion that petitioner's residences contained evidence of drug trafficking items or firearms. See: United States v. Ellison, 632 F. 3d 347, 349 (6th Cir. 2011) (warrant to search residence for drugs valid informant

observed someone come out of residence, engage in drug transaction, then return to residence); <u>United States v. Lalor</u>, 996 F. 2d 1578, 1582 (4th Cir 1993)(warrant invalid because supporting affidavit lacked "basis from which the magistrate could infer that evidence of drug activity would be found at (defendant's address), "and affidavit gave no information as to proximity of alleged narcotic sales to defendants residence); <u>United States v. Green</u>, 634 F. 2d 222, 226 (5th Cir. 1981)(warrant invalid because evidence that defendant engaged in criminal activity in California was insufficient to support inferences that incriminating evidence would be found at home in Florida); and also: <u>Gentry v. Sevier</u>, 697 F. 3d 838, 851-52 (7th Cir. 2010)(counsels failure to object to suppressible evidence was unreasonable because police clearly violated defendants 4th Amendment rights) Fed.R. Evid. 201 (c) (2); Petitioner requests court to judicial notice of the attached motion for production requesting search warrants/affidavits.; <u>Adams v. Bertrand</u>, 453 F. 3d 428, 436 (7t Cir. 2006) (ineffective assistance where counsel failed to investigate witness that "could have swung the case in the clients favor").

## ARGUMENT # SIXTEEN
## SIXTH AND FOURTEENTH AMENDMENT VIOLATIONS OF THE U.S. CONSTITUTION

The petitioner alleges that official misconduct violates his right to the compulsory process clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment by successfully intimidating and attempting to dissuade several key witnesses from testifying on behalf of the defense. Those witnesses testimony were material to the petitioner's defense and their testimony would have cast some doubt on the Government's case at the Petitioners trial.

## PRESENTATION OF FALSE EVIDENCE

This constitutional violation includes the fact that crucial testimony was improperly suppressed and this constitutional violation eliminated the petitioner's principal (if not his only defense). The petitioner wishes to establish an "absence of [] fairness [that] fatally infected the entire trial." Valenzuela-Bernal, 458 U.S. at 872. In violation of the Due Process Clause of the Fourteenth Amendment. Evidence that "cast doubt" on the government's case qualifies as MATERIAL. See: United States v. Leal-Del Carmen 697 F. 3d 964, 972 (9th Cir. 2012) See also Gov't of Virgin Islands v. Mills 956 F. 2d 443, 446, 27 V.1. 1st Affidavit 353 (3rd Cir. 1992) A conviction obtained through use of false evidence, known to be such by representatives of the state, must fall under the Fourteenth Amendment. The U.S. Supreme Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury. For a petitioner to succeed on a false evidence claim, he must demonstrate:

(1) That the prosecution presented false testimony

(2)That the prosecution knew was false

(3) That was material.

Sometimes in approximately December 2012 a raid was conducted by DEA detective Richard Dalrymple and other agents on one of the Smiths rental trailers which was occupied by Bill Stanley. During the raid Stanley was caught with 29 and a half oxycodone pills that he was trying to distribute. Stanley was not arrested during the raid. Immediately after the police officers left the trailer park Stanley confided to several of the surrounding tenants that the detective who conducted the raid wanted him (Stanley) to falsely state that the pills in

which he was caught trying to distribute were furnished for him to sell by the Petitioner (Terry Smith). In exchange for the perjured statement, Stanley was promised by detective Richard Dalrymple that he would not be charged for distribution or he would receive a lighter sentence for his cooperation. Stanley then sent a neighboring tenant by the name of Randall Grubb across the road to the petitioner's home and ask him to come to the trailer park to speak with Stanley. When the petitioner arrived at Stanley's residence Stanley notified the petitioner of the conspiracy plot in which the detective wanted him to enter into (See enclosed statement of Randall Grubb). The petitioner told Stanley if he wanted to blame someone for sponsoring him pills then he needed to blame the responsible party not the petitioner in this case who was innocent of those accusations.

On May 14th 2013 Brandon Stanley and his girlfriend Tracy Whittymore called the petitioner at his home and ask the petitioner to borrow 30 dollars to get his father Bill Stanley released from the Clay County Jail. The petitioner agreed to give them the money which the couple picked up at his home. The couple returned to the petitioner's home with Bill Stanley shortly after receiving the money and then the group borrows more money for gas and cigarettes. The trio then leaves the petitioners home and headed in the direction of London Kentucky. This is where the Stanley's lived at that time.

Shortly after their departure from the petitioner's home the petitioner receives a frantic phone call from Brandon Stanley's girlfriend, Tracy Whittymore. She stated to the petitioner that she had just driven the Stanley's to the London KY DEA office where the Stanley's Bill and Brandon were inside with agent Richard Dalrymple entering into a fraudulent agreement to commit perjury against the petitioner in order to have their unrelated drug trafficking charges amended or dropped. She stated to the petitioner that she was also

asked to join in on the conspiracy with the Stanley's and the detective, but refused to participate.

The petitioner stated to Tracy Whittymore, that she and the petitioner knew the Stanley's were lying and no one could be arrested on such ridiculous hearsay claims without proof. The petitioner was wrong.

On August 21, 2013 two simultaneous raids were conducted on the petitioner's homes. One home was in Manchester KY and the other was in Berea KY. Nothing illegal was seized during the raids on either home, as stated by both detectives during the petitioner's trial (Trial Transcripts. Page 1450 and 1471). However, it was falsely stated by officials to the press that a drug ledger was found during the raids. This greatly affected public opinion against the Smith's. At trial detectives admitted the drug ledger didn't exist (Trial Transcripts. Page 1467 L 2.3.4.). Ten collector guns were seized from the Berea residence, which was 60 miles away from the main residence at Manchester KY. Nine of those guns seized were in a gun safe. One pistol was in a nightstand. The petitioner's wife was the one who gave officials the combination to the safe. The petitioner's wife did possess a Ky concealed weapon permit at the time of the raid. She was allowed to possess those firearms and she did claim ownership of all those firearms. Officials did fingerprint those guns hoping to find the petitioners fingerprints, NONE WERE RECOVERED. The petitioner was not allowed to possess a firearm because of a previous conviction.

The day of the raid the only thing officers were concerned with was trying to find any property or vehicles which were clear of liens so they could be confiscated. There were several collector vehicles on the property but they were mortgaged. There was one police officer at the scene which the petitioner was familiar with because that officer had been called several times to the Smith's trailer park on disturbances. That officer stated to the petitioner that the DEA agents were upset with him because he was the one who checked the titles of the petitioner's vehicles. The computer showed the mortgage status of

those vehicles as pending. This meant that before the raid that the agents believed those vehicle titles were free of liens. They were not.

A Yamaha Rhino (ATV) was seized from the Manchester residence. The petitioner had purchased the ATV new years ago and had made monthly installments on the ATV. The ATV was released several days after the raids. When the petitioners wife arrived in London KY to pick up the ATV she was told by Detective Dalrymple that she needed to retain an attorney because her husband (the petitioner Terry Smith) would not confess to illegal activity or cooperate with DEA officials and that she was going to be charged and arrested in the petitioners case. It was at that time that the petitioner's wife Gerry Smith retained Attorney Steven Charles from Manchester KY to represent her in the event of an arrest. In December 2013 Gerry Smith was arrested and charged with her husband in his conspiracy case. She was immediately released on bond.

The petitioner's wife Gerry hired an investigator from London KY by the name of Ric Cawood, to investigate the case and to take statements from several friends and former tenants who claimed they had been approached by detective Richard Dalrymple and threatened or harassed into making false statements against the Smith's. Some of the individuals making claims were Gary Nantz, Toleman Johnson, Steven Smallwood, Shelia Barger and others. A partial list of names and comments from those interviewed by investigator Cawood are enclosed with this summary.

Tracy Whittymore, the girlfriend of Brandon Stanley visited the petitioner Terry Smith at the Laurel County Jail. Tracy is the person who drove Bill and Brandon Stanley to meet with detective Dalrymple. She stated to the petitioner that she would appear in court for his defense and expose the plot and perjured testimony that had been devised by detective Richard Dalrymple. And how this plan was to be carried out by Bill and Brandon Stanley. That visit was recorded by audio and video as jail officials watched and listened to that visit. Some of those guards from the jail are also employed as Sheriff's deputies and do work

assignments with Detective Dalrymple. After the visit at the jail it became known to the detective's colleagues and friends that the conspiracy plot against the petitioner was going to be exposed during trial.

In December 2014, the petitioner's wife Gerry was visited by a tenant Randall Grubb. He presented a note to Mrs. Smith containing a phone number given to him by Bill Stanley. According to Grubb, Stanley's intentions were to extort $1500 from Mrs. Smith in order to tell authorities how he had been threatened and coerced by Detective Richard Dalrymple into making false statements against Terry and Gerry Smith in their upcoming trial. Mrs. Smith immediately contacted her attorney Stephen Charles and the petitioner (Terry Smith) immediately contacted his court appointed attorney Eric Edwards to notify the attorneys of the extortion attempt. Both attorneys, Edwards and Charles, were asked to contact the F.B.I. to set up a sting operation on Stanley to help prove their innocence. The petitioner states that Edwards commented, "There were nothing he could do on the matter". Steven Charles told the petitioners wife that he had contacted the prosecutor (Sam Dotson)and made him aware of the fraudulent attempt and the perjured testimony that was going to be used against the Smith's during trial (affidavit of Gerry Smith enclosed).


On December 9, 2014 A month before the petitioners trial, Randall Grubb gave a notarized Affidavit at the Clay County, Clerks office in which he explains and exposes Bill Stanley's extortion attempts along with the corruption alleged against DEA agent Richard Dalrymple made by Stanley. (Randall Grubbs affidavit enclosed)


Attorney Eric Edwards visits the petitioner at the Laurel County Jail and asked the petitioner to write down any and all potential witnesses names which needed to be subpoenaed to trial. Including,

the witnesses purposed testimony along with any information which could be used to discredit the government's case against the petitioner. The petitioner was taken back to his cell where he immediately started to complete the witness list with the other information which he had already been compiling. It wasn't long until jail employees came rushing into the cell and ordered everyone to leave their belongings where they were and to exit the cell. Everyone was taken to another part of the jail. When the petitioner and other inmates were returned to the cell. The petitioner saw right away that all his legal material was gone. He requested the legal material to be returned and told officials that the confiscated legal material was vital in his upcoming trial but officials refused to return that material. A complaint was immediately logged by Smith on the jail computer or (KIOSK) to the jailer explaining the situation. The petitioner did not receive a response from anyone. That complaint to the jailer should be a permanent record. The witness list with the vital proposed testimony was never returned. The petitioner asked for the jail officials to contact his attorney or the U.S. Marshalls service in hopes of recovering that legal material. No one was contacted. Instead, visiting at the jail was stopped and access to all telephones throughout the jail were cut off. The petitioner states this isolation of prisoners went on for a couple days. The petitioner was then taken across the road to federal court in London KY where a hearing for the petitioner was already underway. The petitioner made his attorney aware of the theft of his legal work. The petitioner also spoke to the Marshalls service. The Marshalls were also made aware of the incident. One of the Marshalls stated that he had spoken to someone at the jail. The petitioner hopes his complaint was officially noted in the Marshalls records. No action was ever taken.

The most troubling part of this incident is that, during the jail lockdown the prosecutor and the detective Dalrymple show up at the door steps

of some of the petitioners proposed defense witnesses with subpoenas. They tried to persuade those people to testify for the government. Two of those people approached by the prosecutor and detective were Susie and Randall Grubb. The Grubbs wanted to tell the truth at trial and would not change to the governments' side. It was written in the paperwork taken from the jail all the details of what the Grubbs would testify to. Several names of proposed government witnesses were also listed on the confiscated paperwork. There were also information in that paperwork which would show how the petitioner could disprove several government witnesses fraudulent statements. Those witnesses were never called by the prosecutor.

When Susie and Randall Grubb show up at court to testify for the petitioner and his wife Gerry. They are appointed attorneys and told if they testify on the petitioner's behalf that they could be added to the petitioner's case (Trial Transcripts page.1748). The prosecutor knew the Grubbs were going to expose the perjury and conspiracy conjured up by Detective Richard Dalrymple and the Stanley's. Both Susie and Randall Grubb stated to their attorney that they would take the 5th (Trial Transcript. page. 1753-1754) Attorney Edwards showed the petitioner two files. One contained a picture of Susie and the other was of her husband Randall. Susie Grubbs had sold a pill to a confidential informant on June 25, 2013 (Trial Transcripts Page.1747). According to records, Randall was present during that sale. This controlled buy was almost 2 years before the petitioner's trial. The prosecutor had withheld this information of the drug buy from the Grubbs and the petitioner's attorney until the day that the Grubbs wanted to testify in the petitioner's defense. It was at that time that those trafficking charges were produced and used as blackmail to force the Grubbs to withhold the critical testimony that would have cleared the petitioner

and would have exposed the fraud that was going to be used in court against the Smith's. The Grubbs were released from the petitioners witness list and allowed to leave taking the truth with them. The Grubbs were never charged in the petitioner's case. The prosecutors plan had worked. The Smith's had no defense. Chances of a fair trial for the petitioner had been crushed by the prosecutor, again.

Tracy Whittymore was also at court the day of trial to testify in the petitioners behalf. She was the girlfriend of Brandon Stanley. Tracy is the person who drove the Stanley's to meet Detective Dalrymple when the fraudulent deal was made. She could testify how the Stanley's were lying. She had been asked by the Stanley's to join in on their scheme but had refused. Tracy had visited the petitioner at the jail before trial and discussed the plot between the Stanley's and the Detective Richard Dalrymple. All conversations with visitors are recorded at the jail. Once Tracy talked to the Grubbs and heard of the prosecutors threats she became afraid to testify. Attorney Edwards spoke to Tracy and advised the petitioner that she might not make a good witness. All witnesses were dismissed during trial. Both trial attorneys and the prosecutor KNEW before trial that perjured testimony was going to be used against the petitioner and his wife. The petitioner had no defense. The orchestrated trial continued filled with fraud and perjury which both attorneys and the prosecutor allowed to happen.


The prosecutor and attorneys knew the testimony of Susie and Randall Grubb along with the testimony of Tracy Whittymore would show the truth to the court and the jury concerning Bill and Brandon Stanley's perjured testimony. Their testimony would also expose the

conspiracy agreement made between Detective Richard Dalrymple and the Stanley's.

The prosecutor and attorneys allowed Bill Stanley and his son Brandon Stanley to take the witness stand on the government's behalf with the knowledge that the Stanley's were going to use fabricated perjured testimony in order to secure a conviction against the petitioner and his wife Gerry Smith.

During trial, on cross- examination by Attorney Edwards, Stanley was confronted and asked if he (Stanley) and detective Dalrymple had made a deal for Stanley to accuse the 29 and a half oxycodone pills that he was arrested and charged for possessing, as belonging to the petitioner (Terry Smith). Stanley denied the allegations.

When asked if he had made any deals with the government, Stanley stated the only deal he had made was, that he would not be charged in the petitioner's case for his testimony.

Stanley then contradicts his earlier testimony and admits an illegal deal made between himself and detective Richard Dalrymple, when he confessed under oath that he had made a deal with Detective Dalrymple to be charged with one oxycodone pill instead of the 29 and a half that he was caught trying to distribute (Trial Transcripts.page-1498). Attorney for the petitioner Edwards, never questioned Stanley on the acknowledged deal made between him and the detective.

_, AND BRANDON STANLEY_

Because Bill Stanley was knowingly allowed to present fabricated and perjured testimony during the petitioner's trial by both trial attorneys and the prosecutor, that testimony greatly affected the outcome the petitioner's trial making an unfair prejudice against both the petitioner and his wife Gerry. The petitioner and his wife were found guilty of all charges.

On February 9, 2015 Randall and Susie Grubbs statements were filed by a family friend along with other statements and motions in London Federal Court. These statements were filed (BEFORE) the petitioner and his wife Gerry Smith were final sentenced. The filing of these statements also notified the court there had been a serious injustice committed during the Smiths trial. Those statements which were filed of the Grubbs accounts had been signed and notarized at the Manchester KY Courthouse a month before the petitioner's trial. Both trial attorneys and the prosecutor knew of the existence and contents of those statements BEFORE trial. This is why the prosecutor did not want the Grubbs to testify. One statement filed was of Randall Grubb confirming a conspiracy between the Stanley's and DEA agent Richard Dalrymple to commit perjury and fraud against the Smith's. The other statement filed was also very damaging to the prosecutors case which he was presenting to the jury. That statement was made by Susie Grubb concerning the death of her sister Patty Smallwood and the governments overdose theory. In Susie Grubbs statement she told how her sister Patty had predicted her own death and also how Patty had placed an expiration date on the date of her death, which was September 19, 2011. Patty Smallwood did not exceed her predicted timeline. Patty was found deceased at her home September 10, 2011. Police never investigated Smallwood's death and no autopsy was performed on Smallwood's body. This leaves the question, what did

Smallwood know which compelled her to make those type of statements and predictions to friends and family. It had been almost 3 years after Patty Smallwood's death that DEA agents charged the petitioner Terry Smith with the distribution of Oxycodone which resulted in the death of Patty Smallwood. (Statement of Susie Grubb enclosed). Attorney Eric Edward immediately withdrew as counsel for the petitioner once those statements were filed with the court. Sentencing was allowed to continue for the Smiths. Attorney Willis Coffee was appointed to fill in at sentencing for the petitioner. Sentencing was allowed to continue as scheduled. at sentencing when the petitioner Terry Smith was asked if he had anything to say, Mr. Smith did make the court aware that there had been a problem in the treatment of his defense witnesses when he stated to the court that if he were allowed to treat witnesses the way his had been treated during court proceedings, that an illegal conviction could be obtained against her (the trial judge). There have never been an investigation into the perjured testimony made by the Stanley's during trial or the accusations made against the accused DEA agents.

There have been several other people who have complained of threats and misconduct toward themselves in order to coerce those people into giving false statements and perjured testimony against the Smith's. (See enclosed statements: taken by Investigator Ric Cawood).

After the petitioners trial a person who had falsely testified against the petitioner during his and his wife's trial (Betty Tipton) contacted the petitioner through another inmate while the petitioner was lodged in the Laurel County jail. Mrs. Tipton wanted the petitioner (Terry Smith) to contact her through the jail telephone. The petitioner did contact Miss Tipton at which time she apologized for her perjured

testimony during his trial and continued to explain why she falsely testified against him.

The statement of Betty Tipton stating to the court and the world that she was threatened into committing perjury by corrupt DEA agents Richard and Iain Dalrymple was filed in court 2 weeks BEFORE the sentencing of Terry and Gerry Smith. Her statement along with the statements of Susie and Randall Grubb have been ignored by the court. Terry and Gerry Smith were Illegally Sentenced when the prosecutor KNEW perjured testimony had been used to obtain unlawful and illegal conviction.

The prosecutor KNEW of the perjured testimony when witnesses and attorneys tried to expose the DEA detectives during trial. Even after trial witnesses told of the official misconduct. It appears the prosecutor is protecting the corrupt DEA agents. These actions need reported to the proper authorities for criminal prosecution of official misconduct that cannot be denied. This miscarriage of justice is part of the courts records.

Mrs. Tipton stated that she knew their conversations were recorded. She explained to the petitioner that Detective Richard Dalrymple and his brother Iain Dalrymple threatened to charge her in connection with the death of Patty Smallwood because of a previous fight between her and Smallwood if she (Betty) did not do as she was told and falsely testify. Mrs. Tipton stated that she was specifically instructed by detectives to give false testimony against Terry Smith and his wife Gerry. That she was told to falsely testify that she had seen Gerry Smith with a gun and large sums of cash. Tipton states that although she did falsely testify against Terry Smith, that she was nervous and forgot to recite some of the false details which she had been told to recite against Gerry Smith. Tipton says in her statement

that she felt very badly about her false testimony and has since apologized to Terry Smith over the jail telephone where their conversations were recorded. Terry Smith asked Mrs. Tipton to expose the threats made to her by the detectives and to expose the perjury which she was forced into committing against the petitioner. And also to expose the planned perjured testimony plot ordered by detectives against his wife Gerry Smith. Mrs. Tipton expressed that she was very scared of the Dalrymple's. She stated that she was aware of the threats which were made during trial against the Grubbs and Tracy Whittymore. Those witnesses also tried to expose the truth and the plot which had been carried out against the petitioner and his wife. Several of these witnesses have given notarized statements which have been filed in Federal court.

Mrs. Tipton was very scared during their conversation. Betty Tipton did give a statement against the detectives. She told of the threats made against her if she didn't give perjured testimony against the Smith's. She stated that she did give perjured testimony during the petitioner's trial against the petitioner Terry Smith. She stated that she was also ordered by the detectives to give perjured testimony during the petitioner's trial against the petitioner's wife Gerry Smith (Statement enclosed). The petitioner states that he is concerned for the safety of Betty Tipton: by DEA agents as well as local law officials.


The same detectives who investigated and prosecuted this case were also involved in several other sponsoring cases from 2012 to 2015 involving drugs as well as other types of crimes. Some of the same prosecuting witnesses in this case also played a major role in some of those high profile cases. Obvious official misconduct is widely present in this case. This official misconduct cannot be denied when looking at

Grand Jury transcripts, court records, trial transcripts, and statements from witnesses. Records will show that perjury was presented to the court by several witnesses who were drafted by D.E.A agents Richard and Iain Dalrymple in order to obtain a false and illegal conviction in this case. One cannot state as a fact that the same type of official misconduct was involved in those other cases as it was this case. However, this does bring into question the integrity of all those same officials who investigated and prosecuted these cases. It would not be unrealistic to believe this same type of official abuse used in this case was also used in some of those other cases. For example: assisting in the raid of the petitioner (Terry Smith) home was detective Jeff Senters. Mr. Senters also had exposure with some of the witnesses in this case. Including but not limited to Brandon Stanley. According to trial transcripts it was Senters who transported Stanley from Manchester to London Ky to meet with detective Richard Dalrymple. Bill and Brandon Stanley's illegal deal to commit perjury proposed by Detective Richard Dalrymple was to be exposed during trial. Unfortunately, for the defense those witnesses were scared away by threats of prosecution should they decide to testify Senters who was part of Detective Richard and Iain Dalrymple investigative team was indicted in federal court for making several false statements while under oath during a Untied States District Court hearing in Lexington Ky. Detectives Richard and Iain Dalrymple were also involved in the investigation and prosecution of that same case in which Senters was indicted for making false statements.

**PLEASE TAKE NOTICE OF ALL STATEMENTS AND AFFIDAVITS ENCLOSED IN THIS 2255 MOTION.**

Trial attorney was ineffective for not exposing <u>**PERJURED TESTIMONY**</u> used at trial and <u>**OFFICIAL MISCONDUCT**</u>. If attorney had of exposed this fact the trial would have had a different outcome.

**Rivera Alicea V. United States,** 404 F. 3d1 (1st Circuit 2005) Counsels failure to interview witnesses that could testify that governments principal witness planned to lie about defendants involvement in a drug trafficking scheme. States claim of ineffective assistance claim.

The Supreme Court has recognized that, "The right to council is the right to effective assistance of counsel. " McMann v. Richardson, 397 U.S. 759, 771 (1970).

Council for the petitioner allowed the false statement to go uncorrected when it has been long established that the "deliberate deception of a trial court by the presentation of known false evidence is incompatible with rudimentary demands for justice". Giglio v United States 405 U.S. 150,31 L.2d 104,92 S Ct 763 (1972). This rule applies to both solicitation of false statements and the knowing acquiescence in false statements. Napue v. Illinois, 360 U.S. 264, 269, 3L Ed 2d 1217, 79 S. Ct. 1173

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must satisfy the two-prong test which the Supreme Court established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2055 (1984). The court held that to prevail on such a claim, a defendant must demonstrate that the representation he received "failed below an objective standard of reasonableness, and he must establish "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." Ld. At 466 U.S. 688,694 104 S Ct. 2052, 2068 (1984).

The petitioner has fulfilled his burden to show the court that the two-prong test which the Supreme Court established in Strickland has been accomplished. His council proved to be ineffective which in return, caused the results of his trial to have a totally different outcome. Uncontested, known false testimony was presented by

Government witnesses during the petitioners trial which was unconstitutional and violated the petitioners right to a fair and just trial.

## ARGUMENT # SEVENTEEN
## PROSECUTORIAL MISCONDUCT

On July 10 2015 several statements and motions were filed in Federal court on behalf of the petitioner Terry Smith. One of those affidavits was from Government testifying witness Betty Tipton. In this affidavit Ms. Tipton stated that she did commit perjury during the petitioners trial. She stated that she did this because of threats made upon her by DEA agents. When Ms. Tiptons statement was filed in court this made the court well aware of official misconduct, fraud and perjury had been used during trial to obtain an illegal conviction against the Smiths'. As of this date the court has not responded to Betty Tiptons statement with claims of official misconduct and her unwilling use of coerced perjury used during the Smiths' trial. Court records show that the prosecutor (Sam Dotson) was well aware of Ms. Tiptons statement along with other complaining witnesses statements which claim the use of fraud and official abuse in order to hide official abuse against the Smiths'. The conviction and sentencing of Terry and Gerry Smith is unjust and illegal. Once the court was aware of this abuse, a mistrial should have been ordered by the court. We pray the court set aside the convictions of Terry and Gerry Smith and order an investigation into the abuse and official misconduct in this case. A prosecutor or court cannot knowingly allow perjured testimony and fraud to be used to obtain a fraudulent conviction. see; Betty Tiptons statement (attached) and also her statement is part of the court record. Also, see related statement of Randall Grubb.

"The Supreme Court has explained that prosecutors must temper their arguments to avoid unfair trials because "[the prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done". See: Broom v. Mitchell, 441 F. 3d 392, 412 (6th Cir. 2005); Berger v. United States, 295 U.S. 78, 88 (1935); "where the cumulative effect of error is so prejudicial that a defendant is denied a fair trial, habeas relief may be warranted". United States v. Neocehea, 986 F. 2d 1273, 1282-83 (9th Cir. 1993). See: Fed.R.Crim.P. 52 (b).

Although, individual errors looked at separately may not rise to the level of reversible error, the cumulative effect may nevertheless be so prejudicial to require reversal. See: United States v. Wallace, 848 F. 2d 1464, 1475 (9th Cir 1988) (the cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial); United States v. Adams, 722 F. 3d 788, 832 (6th Cir. 2013). In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. A prosecutor may strike hard blows, but not foul ones. Berger supra. See also: United States v. Collins 799 F. 3d 554, 599 (6th Cir. 2014) ("discussing how to incorporate cumulative error analysis, plain errors that do not, standing alone, necessitate reversal").

**Further, the errors described above some falling within the scope of statutory criminal violations specifically perjury, grand jury abuse, and prosecutorial misconduct has impacted substantive rights, and brought into question the confidence of the public reputation of judicial proceedings.**

## REQUEST FOR JUDICIAL NOTICE FED.R.EVID. 201(d), AND 201(c) (2)

Petitioner, requests this honorable court recommend this matter of attorney, investigative, and prosecutorial misconduct to the Office of Professional Responsibility for investigation. See: American Bar Association, Rule 3.8(d), and Rule 8.4 of rules governing Professional Responsibility. Further, petitioner has identified various instances of knowing use of false, polluted, and perjured testimony before the grand jury, and tribunal thus petitioner requests F.B.I. investigation pursuant to 18 U.S.C. Section 1621, 18 U.S.C. Section 1622, and Section 18 U.S.C. 1623. See: Bronston v. United States, 409 U.S. 352, 356 (1973) ("The [perjury] statute......is a federal statute enacted in an effort to keep the course of justice free from the pollution of perjury." (Quoting United States v. Williams, 341 U.S. 58, 68 (1951)). See: United States v. Sherman, 150 F. 3d 306, 315 (3d Cir. 1998) (finding purpose of 1623 is "to encourage truthful testimony by witnesses appearing before federal courts and grand jury); Dunn v. United States, 442 U.S. 100, 107-08 (1979) (finding purpose of 18 U.S.C. 1623 is "to facilitate perjury prosecutions and thereby enhance the reliability of testimony before federal courts and grand juries). Petitioner requests exercise of courts inherent power for dismissal of indictment with prejudice.

Respectfully Submitted,

Terry Smith                    Date 11-1-2017

Terry Smith 16714-032

United States Penitentiary

Hazelton P.O. Box 2000

Bruceton Mills WV 26525

## PRELIMINARY REQUEST FOR
## CERTIFICATE OF APPEALABILITY

Petitioner requests a preliminary Certificate of Appeal ability for the following compelling circumstances: (1) Petitioners claims showed a fair likelihood of success on constitutional claims; (2) the claims were factually complex, and legally intricate; (3) facts were under developed; (4) soundness of district courts procedural ruling was debatable and petitioner asserted constitutional claims that had not been fully developed due to that ruling; (5) the legality of issues required resort to statutory interpretation of state law; and (6) petitioners claims involve credibility dispute regarding counsels thought process, thus counsel is required for cross examination purposes before this district court to resolve the charge of ineffective assistance of counsel which is question of fact, and law. See: Gerber v. Varano, 512 Fed. Appx. 131, 136 (3d Cir. 2012)(citing Mateo v. United States, 310 F. 3d 39, 40 (1sr Cir. 2002)(addressing whether constitutional claim is "colorable"); and Houser v. Dretke, 395 F. 3d 560, 562 (5th Cir. 2004)("if [the district court] materials are unclear or incomplete, then [a] C.O.A. should be granted and the appellate panel, if it decides the procedural issues favorably to the petitioner, may have to remand the case for further proceedings")). See: Buck v. Davis (no. 15-8049)(U.S. 2017)(holding courts may place too heavy a burden on the prisoner at the C.O.A. stage by adjudicating the actual merits of the clam instead of solely screening claims debateability).
See: 28 U.S.C. 2253 (c) and Fed.R. Appellate Procedure 22.

Petitioner requests preliminary Certificate of Appeal ability on all claims individually.

DATE: 11-1-2017

RESPECTFULLY SUBMITTED,

Jerry Smith

## CONCLUSION

Trial, and appellate counsel rendered defective performance by operating below standard of prevailing professional norms, but for counsels errors, and omissions the harmful injury suffered by petitioner would have turned out favorable. See: <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); Further, appellate counsel held a duty to raise the above identified plain error issues pursuant to 52 (b) which is supported by circuit precedent regarding prosecutorial misconduct. See: <u>United States v. Green</u>, 305 F. 3d 422, 429 (6th Cir. 2002) (plain error review for un-objected prosecutorial misconduct).

Appellate counsels failure to reasonably raise meritorious issue on direct appeal sufficient to show cause. See: <u>United States v. Frady</u>, 465 U.S. 152 (1982). Petitioner's constructive denial of counsel requires presumption of prejudice wherein defense counsel adversarial function is completely lacking leaving petitioner with just a warm body to standby in the courtroom. See: <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

Further, pursuant to Fed.R.Evid.201(c)(2), (D.O.C. 258) at 5 reflects a 300.00 court assessment despite (D.O.C. 258) at 2, running all counts concurrent, thus $300.00 assessment renders terms not technically concurrent thus because of double jeopardy concerns of collateral consequences all counts must be vacated if petitioner successfully vacates at least one. See: <u>United States v. Lapointe</u>, 690 F. 3d 434, 439 n.1 (6th Cir. 2012). See exh (0) attached.

Wherefore, petitioner requests this honorable court enforce an order to vacate, remand, and schedule an evidentiary hearing with appointment of counsel pursuant to Rule 8(a) of Rules Governing 2255 proceedings. The above statements are sworn under penalty of perjury pursuant to 28 U.S.C. 1746.

DATE: _11-1-2017_

RESPECTFULLY SUBMITTED,

_Yerry Smith, 16714-032_

88