UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:13-CR-34-KKC-EBA-1
CIVIL ACTION: 6:17-CV-295-KKC-EBA

UNITED STATES OF AMERICA,                                    PLAINTIFF,

V.                              **RECOMMENDED DISPOSITION**

TERRY R. SMITH,                                              DEFENDANT.

## INTRODUCTION

This matter is before the undersigned on Terry R. Smith's *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. [R. 343 (Motion); R. 350 (Memorandum); R. 355 (First Reply); R. 357 (Supplement); R. 379 (Second Reply); R. 398 (Addendum)]. The matter has been fully briefed and is ripe for review. For the reasons that follow, it is **recommended** that Smith's Motion to Vacate (R. 343) be **DENIED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 26, 2015, a jury convicted Smith of conspiring with his wife, Gerry, to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. [R. 208 (Jury Verdict)]. The jury also found Smith guilty of the two other crimes: distribution of oxycodone resulting in death in violation of 21 U.S.C. § 841(a)(1), and possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [*Id.*; R. 163 (Third Superseding Indictment)]. Smith was sentenced to 360 months imprisonment for conspiracy to distribute oxycodone, life imprisonment for distribution of oxycodone resulting in the death of another, and ten years for the possession of a firearm by a convicted felon, all to run concurrently. [R. 258]. He appealed these convictions. [R. 298].

By opinion dated July 22, 2016, the Sixth Circuit Court of Appeals described the facts of this case as follows:

> The Smiths owned and operated a trailer park in Manchester, Kentucky. From that perch they orchestrated a drug trafficking scheme in which they recruited addicts often park tenants to travel to out-of-state pain clinics to fraudulently obtain and fill oxycodone prescriptions. The Smiths compensated recruits with pills, cash, or reduced rent.
>
> Terry organized and financed the clinic visits and prescription fillings, while Gerry handled the money and kept records. Sometimes Terry or Gerry would personally travel to pain clinics, and Terry brought a gun on at least one trip. Both sold or oversaw the sale of oxycodone and used the proceeds to fund more pain-clinic trips.
>
> In the course of the conspiracy, Patty Smallwood one of the Smiths' tenant-recruits died. The day before her death, Terry financed a trip on which Patty and her fiancé fraudulently obtained and filled an oxycodone prescription. Upon their return, Terry collected his share of pills and returned the rest to Patty. Patty retired to her trailer, snorted those pills, and was dead by morning. A toxicology report described Patty's cause of death as combined drug intoxication.
>
> A grand jury indicted Terry and Gerry for their drug conspiracy. It also indicted Terry for distributing the oxycodone that killed Patty and for being a felon in possession of a firearm. Terry moved to sever the firearm charge, which the district court denied. A jury convicted Terry and Gerry on their respective counts.

*United States v. Smith,* 656 Fed. App'x. 70, 72 (6th Cir. 2016). [R. 302 (Judgment of USCA); R. 303 (Mandate)]. On appeal, Smith argued: (1) this Court erred by not severing the drug offense charges from the firearm charge for trial purposes; (2) there was insufficient evidence to sustain the conviction for the overdose death of another (*e.g.*, Patty Smallwood); and (3) that "cumulative error rendered his trial unfair." [R. 302 at 2 ¶ 3]. The Sixth Circuit rejected these claims and affirmed the convictions. *Id.*

On October 11, 2016, the Supreme Court denied Smith's petition for a writ of certiorari. [R. 309]. On October 23, 2017, Smith filed this instant motion seeking relief under

§ 2255. [R. 343]. Because his petition was filed past the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act (AEDPA), the Court recommended denying Smith's motion on grounds that it was untimely. [R. 356]. Subsequently, finding Smith to have availed himself pursuant to 28 U.S.C. §1746(2) and the prison mailbox rule, the Court vacated the recommended disposition and directed the Government to address the merits of the claims outlined in Smith's §2255 motion. *See* R. 355 (Reply to USA's Response); R. 357 (Supplement); R. 358 (Order Vacating Report and Recommendations).

This matter is ripe for a decision following the submission of the United States' Second Response to Smith's § 2255 Motion [R. 362] and Smith's Reply [R. 379]. For the reasons set forth below, the undersigned **RECOMMENDS** that Smith's Motion to Vacate, [R. 343], be **DENIED**.

## STANDARD OF REVIEW

It is incumbent upon a federal prisoner seeking relief under 28 U.S.C. § 2255 to show that his conviction was the product of a fundamental defect in the proceedings, which necessarily resulted in a complete miscarriage of justice or an egregious error violative of due process. *Gall v. United States,* 21 F.3d 107, 109 (6th Cir. 1994). Pursuant to § 2255, a petitioner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, the court was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

In order to prevail on his motion, the petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006)

(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). If the movant alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht,* 507 U.S. at 637–38); *see also Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Alternately, if alleging a non-constitutional error, the defendant must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## ANALYSIS

Smith asserts twenty-one (21) claims in his motion to vacate under 28 U.S.C. § 2255 and in his memorandum of points and authorities— all of which allege that he received ineffective assistance of counsel. *See* R. 343-1 (Motion to Vacate); R. 350 at 3-7 (Memorandum). Notably, Smith solely addresses and fully explores, eighteen (18)[1] of these claims in his pleadings; therefore, the Court focuses its attention only on these specific allegations.

---

[1] Though Smith consistently references twenty-one (21) claims, he details only seventeen (17) of these claims in his memorandum of points and authorities (R. 350 at 8-86), filed subsequent to his petition. Smith has thus failed to comply with Rule 2 of the Rules Governing Section 2255 Proceedings, which require each applicant to "state the facts supporting each ground."

Smith's eighteenth claim was addressed in his January, 7, 2019 motion to amend by addendum (R. 398). In his addendum, Smith addresses "argument 21," which he fervently attempted to "reserve" for later argument in his petition and memorandum of law. *See* R. 343 at 4; R. 350 at 7. On January 28, 2019 (R. 399), the Court granted Smith's motion to amend on the grounds that the claim related to another one of Smith's claims (argument 12), further addressed below.

For these reasons, only eighteen (18) of Smith's claims have been addressed in this recommended disposition, as the other claims present wholly insufficient factual and legal support to warrant adequate consideration.

Essentially, these various theories of ineffective assistance of counsel claims can be addressed in four categorical groups: first, failure to object to or raise improper interpretation/application of the law by the Court (arguments 1, 4, 6, 7, 12, and 13); second, failure to object to or prevent the introduction of certain evidence (arguments 3, 8, 9, 11, 15, and 14); third, failure to object to or raise allegations of prosecutorial misconduct (arguments 2, 5, 16, and 17); and fourth, failure to file relevant/necessary pleadings to preserve and protect Smith's interests (argument 10).

In evaluating claims of ineffective assistance, the Sixth Circuit applies the *Strickland* two-prong test. *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005); *see also Strickland*, 466 U.S. at 687. Under *Strickland*, a defendant first must show his or her counsel was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a defendant must show the deficient performance actually prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Both elements must be shown. Therefore, not only must the attorney's performance have been deficient, but that specific deficiency must also have been the antecedent without which the Defendant's sentence would not have been imposed. *Id.* However, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance-prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

It is true that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. Nonetheless, an attorney

representing a criminal defendant does have some specific, articulable duties. All attorneys owe their clients a duty of loyalty; a duty to avoid conflicts; a duty to advocate, inform, and consult; and counsel has a duty "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir. 2001); *see also Miller v. Francis,* 269 F.3d 609, 615-16 (6th Cir. 2001). For example, "[T]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance." *Brown v. McKee,* 231 Fed.Appx. 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale,* 195 F.3d 70, 73-74 (2d Cir. 1999)). Likewise, absent proof that a suppression motion would have been successful, the petitioner may not be entitled to relief. *Howard v. Bouchard,* 405 F.3d 459, 480 85 (6th Cir. 2005) (holding counsel's performance to fall below prevailing professional norms when he failed to file a motion to suppress).

Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana,* 350 U.S. 91, 101 (1955). While counsel's tactical decisions are not completely immune from Sixth Amendment Review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir. 1984). In evaluating an attorney's duties to his or her client and the sufficiency of an attorney's performance of them, however, courts are highly deferential. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002) (quotation and citation omitted). "An error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland,* 466 U.S. at 691.

## I.  FAILURE OBJECT TO THE IMPROPER INTERPRETATION OR APPLICATION OF LAW

### ARGUMENT 1:

In his first argument, Smith asserts that counsel failed to challenge jury instruction number 17, which instructed a finding of guilt if the jury believed that Smallwood's death was a "result" of the distribution of oxycodone. He contends that the Court did not sufficiently define the word "results" to explain that the use of oxycodone distributed by Smith, as required to be the "but-for" cause of Smallwood's overdose death. Further, Smith contends that the instruction was confusing to the jury, and counsel's lack of objection to the instruction was deficient. [R. 350 at 15]. Notwithstanding Smith's beliefs, a review of the instruction compels the conclusion that counsel did not fail in his duty of representation in raising no objection to the instruction. At the close of evidence in the case, the jury was instructed that:

> If, and only if, you find the defendant Terry Smith guilty of the offense charged in Count 2, you must determine whether Patty Smallwood's death was a result of this distribution.
>
> The government must prove, beyond a reasonable doubt, that Patty Smallwood's death was caused by or resulted from her use of the oxycodone distributed by the defendant Terry Smith.  You must decide whether the result – the death of Patty Smallwood – would not have occurred but for the distribution of oxycodone by the defendant Terry Smith. In other words, you must decide whether *the government has proved beyond a reasonable doubt* that Patty Smallwood would have lived if she had not taken the oxycodone distributed by the defendant.
>
> The government does not have to prove that the defendant intended that death result from the use of oxycodone which he distributed. And the government does not have the burden of establishing that the defendant knew, or should have known, that death or serious bodily injury would result from the distribution or ingestion of the oxycodone.

> If you are convinced that the government has proved this fact, say so by answering "yes" on the special interrogatory accompanying this charge. If you have a reasonable doubt about the cause of Patty Smallwood's death, then say so by answering "no" on the special interrogatory accompanying this charge.

[R. 204 at 21(Instruction No. 17) (emphasis added)].

In order to convict Terry for distribution of oxycodone resulting in the death of another, the government was required to prove beyond a reasonable doubt that he distributed the oxycodone to the deceased and that the distributed oxycodone was a "but-for cause of death." *Burrage v. United States*, 571 U.S. 204, 210 (2014). "We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but for cause of the death or injury". *Id.* at 219.

In light of this standard, the instruction given by the court clearly articulated the correct legal requirement that Terry was only guilty of distributing oxycodone resulting in the death of Smallwood if, "the death of Patty Smallwood – would not have occurred but-for the distribution of oxycodone by the defendant Terry Smith." Therefore, the jury "must [have] decide[d] whether the government proved beyond a reasonable doubt that Patty Smallwood would have lived if she had not taken the oxycodone distributed by the defendant." [R. 204 at 21 (Instruction No. 17)]. Although Smallwood may have ingested multiple drugs prior to her death, the jury was properly instructed that Terry was not guilty *unless* her death would not have occurred *but for* her use of oxycodone that he distributed to her.

In *Burrage*, the Supreme Court held that finding a defendant guilty of the "death results" penalty "requires proof 'that the harm would not have occurred in the absence of— that is, but for—the defendant's conduct.'" *Burrage*, 571 U.S. at 211 (quoting *Univ. of Tex. Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)). This but-for causation rule applies retroactively. *Krieger v. United States*, 842 F.3d 490, 499–500 (7th Cir. 2016). Likewise, in the instant case, because the jury was properly instructed that Smith was guilty of distributing oxycodone resulting in death, if the death of Smallwood would not have occurred *but-for* the distribution of oxycodone by Smith, the instruction given by the court clearly articulated the correct legal requirement. As such, Smith's counsel was not deficient in raising no objection to the properly worded instruction.

## ARGUMENT 4:

In his fourth argument, Smith challenges the sufficiency of count 1 of the indictment, charging a conspiracy. Count One of the second superseding indictment states that:

> On or about a day in March 2011, the exact date unknown, and continuing through on or about August 22, 2013, in Clay County, in the Eastern District of Kentucky, and elsewhere, Terry R. Smith, Gerry Smith, Steven Smallwood, and Toleman Johnson did conspire together and with others to knowingly and intentionally distribute a quantity of pills containing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

[R. 58].

In particular, Smith alleges that counsel was ineffective in failing to object to count 1 because it fails to adequately set forth facts or acts of the conspiracy and sets out an incorrect date for criminal activity. [R. 350 at 35]. As a result, he alleges that count 1, as worded, violates his right to notice of the charge against him. However, a charge of conspiracy does not need to allege every overt act committed in furtherance of the conspiracy. *United States v. Lam Lek Chong*, 544 F.2d 58 (2d Cir. 1976), cert denied, 429 U.S. 1101 (1977). In fact, it need not set forth any specific illegal act. *See United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013). Finally, unless provided by statute, an indictment is not required to allege an exact date

and time of the commission of any charged offense. *United State v. Gaytan*, 74 F.3d 545, 551 (5th Cir.), cert. denied, 519 U.S. 821 (1996); *United States v. Antonelli*, 439 F.2d 1068, 1070 (1th Cir. 1971); *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970).

Therefore, Count 1 of the indictment was not improper and counsel was not deficient in failing to object to the charge.

## ARGUMENTS 6 & 7:

Smith's sixth argument is not entirely clear, but he appears to object to an instruction providing that the jury should not be concerned with punishment. Smith argues that counsel was ineffective for failing to object to Instruction No. 34, which provided that:

> If you decide that the government has proved one or both of the defendants guilty, then it will be my job to decide what the appropriate punishment should be. Deciding what the punishment should be is my job, not yours. It would violate your oaths as jurors to even consider the possible punishment in deciding your verdict.

[R. 204]. Although Smith argues that the jury ought to consider how the community views the seriousness of an offense, that is not the law in this circuit. Here, the issue of punishment or sentencing lies in the hands of the judge, not the jury, and it is not appropriate to directing the jury to consider the issue of punishment in their deliberations. *United States v. Ledbetter*, 2016 WL 1252982, at *14 (S.D. Ohio, 2016) (citing *United States v. Bildebeck*, 1632 F.3d 971, 978 (6th=Cir. 1999) (affirming the trial court's decision to grant the government's motion in limine concerning potential penalties that applied to defendant)).

Next, in Argument Seven, Smith argues that his counsel should have objected to the application of the enhancement under 21 U.S.C. § 851, due to his prior felony conviction. Smith argues that he was not provided notice and an opportunity to affirm or deny the conviction as required by 21 U.S.C. § 851(b); yet he nevertheless fails to consider the effect of the presentence investigation and report—reflecting the record of the prior conviction and the

basis for an enhanced penalty under §851(a)— as well as his failure to address it by objection prior to sentencing. Additionally, since the prior conviction occurred in 2013, more than ten years prior to the offenses charged in the indictment, a subsection of the charged statute prohibits a person from … "challeng[ing] the validity of any prior conviction … which occurred more than five years before the date of the information alleging such prior conviction." §851(e).

Accordingly, Smith's claims must fail for two reasons: first, he was provided with notice and an opportunity to affirm or deny the conviction and he did nothing; and second, the predicate offense he now challenges is more than ten years old, which means that he no longer has the opportunity to affirm or deny under the law. There is thus no basis to find that counsel was ineffective for failing to object to the application of the enhancement under § 851.

## ARGUMENTS 12 and 21:

In his twelfth and twenty-first arguments, Smith asserts that counsel was ineffective for failing to seek dismissal of a purportedly defective indictment, on the basis that it failed to charge an essential element of the offense; specifically, that Smith's distribution of oxycodone was the cause of Patty Smallwood's death. [R. 350 at 65; R. 398]. However, despite Smith's contention, the indictment was not defective.

Count 2 of the Third Superseding Indictment, returned by the grand jury on December 18, 2014, charged that:

> On or about September 9, 2011, in Clay County, in the Eastern District of Kentucky, TERRY R. SMITH did knowingly and intentionally distribute a quantity of pills containing oxycodone, a Schedule II controlled substance, which resulted in the death of Patty Smallwood, all in violation of 21 U.S.C. § 841(a)(1)."

[R. 163].

An indictment is sufficient if it plainly and succinctly states the essential facts constituting the offense charged, and no formal, legal language is necessary. *United States v. Resendiz-Ponce*, 539 U.S. 102 (2007); *United States v. Hudson*, 491 F.3d 590 (6th Cir. 2007). In the present case, the indictment charges that on a specific date in a certain county, Smith knowingly and intentionally distributed oxycodone which resulted in the death of Patty Smallwood. Section 841 of Title 21 of the United States Code prohibits the distribution of controlled substances. The Anti-Drug Abuse Act of 1986, 100 Stat. 3207, amended the penalties for violating § 841, including the "death results" enhancement. When "death or serious bodily injury results from the use of [the distributed] substance," the defendant "shall be sentenced to a term of imprisonment of not less than twenty years or more than life," a substantial fine, "or both." 21 U.S.C. § 841(b)(1)(C). If the "death results" enhancement increases the potential minimum and maximum sentences, "it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage*, 571 U.S. at 210.

Count 2 of Smith's third superseding indictment has two principal elements: (1) knowing or intentional distribution of oxycodone under § 841(a)(1), and (2) death resulting from the use of the distributed oxycodone under § 841(b)(1)(C). *Id.* In the case at hand, the indictment properly informed the defendant of the elements of the charged offense and allowed him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87 (1974). Therefore, there is no basis for Smith to allege that counsel was ineffective for failing to challenge the indictment, as it sufficiently informed the defendant of the offense charged, the elements of the offense, and the facts upon which the charge is based. Put differently, Smith is unable to show that counsel "made errors

so serious" that his rights, as guaranteed to him by the Sixth Amendment were violated. *Strickland*, 466 U.S. at 687. In fact, he cannot show that counsel made any errors.

As such, Smith's claims of ineffective assistance for failing to challenge the charge in the indictment is without merit.

**ARGUMENT 13:**

Next, Smith asserts that there was an impermissible variance of proof on causation of Smallwood's death between grand jury testimony and testimony at trial. [R. 350 at 65]. As related to Smallwood's overdose and the drug(s) that caused her death, Smith argues that he was prejudiced on account of the government's conflicting proof before the grand jury that was offered at trial. Nonetheless, because Smith fails to establish a variance, he cannot be entitled to relief on this issue.

"A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." *United Sates v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012). When a variance occurs, courts must consider whether the proof at trial differed so greatly from the charges that the [defendant] was unfairly surprised and was unable to prepare an adequate defense." *Id*. at 1295 (citing *United States v. Calderon*, 127 F.3d 1314, 1328 (11th Cir.1997)). In this case, the indictment charges that on a specific date, in a particular county, Smith knowingly and intentionally distributed oxycodone which resulted in the death of Patty Smallwood. The proof at trial, as summarized in the Court's opinion denying his motion for a directed verdict, was as follows:

> [B]oth Bill Stanley and Brandon Stanley testified unequivocally that Terry distributed oxycodone pills to Patty the day before her death. Bill verified that Patty consumed the oxycodone that she received from Terry. Therefore, the lay witness testimony establishes that Terry knowingly distributed oxycodone to Patty and that Terry knew that the substance was oxycodone. *See Burrage*, 134 S. Ct. at 886–87.

*2. Medical expert testimony establishes that the oxycodone Patty Smallwood consumed was a but-for cause of her death.*

The United States called the deputy coroner and a toxicologist as an expert witness to establish that the oxycodone Patty Smallwood consumed was a but-for cause of her death. Terry called a medical examiner as an expert witness to attempt to refute the government's evidence.

a) Medical testimony for the United States

Jared Becknell, the Clay County Deputy Coroner, was the first medical professional on the scene at Patty Smallwood's home on September 10, 2011. Jared found Patty lying in her bed, pronounced her dead, and took a blood sample. Jared noted that Patty's body did not show any signs of physical trauma and helped complete her certificate of death. The certificate of death listed Patty's cause of death as a combined drug intoxication from self-ingestion of alprazolam, oxycodone, THC, and hydrocodone. Jared declared that, according to the toxicology report, Patty had a very high amount of oxycodone and low or normal amounts of the other drugs. Specifically, the therapeutic range of oxycodone is 10 to 100 nanograms per milliliter, and Patty's toxicology report found that she had 467 nanograms per milliliter.

Michael Ward, a toxicologist, testified as an expert witness for the United States. He asserted that the level of oxycodone in Patty Smallwood's system was a large level consistent with being a "lethal or overdose level." He further testified that the levels of other drugs in Patty's system were not concerning. Additionally, Michael Ward described the process of postmortem drug redistribution. Postmortem drug redistribution is a scientific process by which drug residue may move between the liver and the heart after a person dies. Consequently, this phenomenon may cause a postmortem toxicology report to find artificially high or artificially low levels of drugs in someone's system. But Michael Ward testified that he did not think that postmortem drug redistribution substantially altered the findings in the toxicology report because the blood sample was collected shortly after Patty died. Further, Michael Ward asserted that a level above 200 nanograms per milliliter—less than half the amount found in Patty's system—would likely be a lethal level of oxycodone.

[R. 249].

As demonstrated by the summary of evidence produced in this case, the evidence at trial did not establish facts materially different from those alleged in the indictment. *See Lander*, 668 F.3d at 1295 (11th Cir. 2012). Therefore, along with the other claims outlined within this section, Smith's claim fails here because there is simply no variance in the proof.

## II. FAILURE TO OBJECT TO CERTAIN EVIDENCE

Next, Smith brings a series of arguments, alleging that evidence was improperly admitted in the case against him, and that counsel was deficient for failing to object.

**ARGUMENT 3:**

Smith's third argument relates to the introduction of Patty Smallwood's death certificate and toxicology report. Smith argues that his attorney failed to object to impermissible hearsay relating to Smallwood's overdose death. Despite this contention, Smith has offered no basis for which counsel should have objected to the introduction of evidence and to the foundation laid for its admissibility.

One of the charges against Smith is that Smallwood died as a direct result of the oxycodone he distributed to her. By its very nature, the evidence that was presented in support of the government's proof is not only relevant, but also probative, of Smallwood's cause of death. Although the evidence is certainly prejudicial to his case— in the sense that the evidence weighed heavily against him— FRE 403 does not offer protection against evidence that is merely prejudicial because it is detrimental to a party's case. *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir. 1980); *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 427 (5th Cir. 2006) (" '[U]nfair prejudice' as used in Rule 403 is not equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be 'unfair'"). Therefore, Terry provides no basis to find that counsel was deficient in failing to object to the introduction of the death certificate and toxicology report into evidence.

**ARGUMENTS 8 & 9:**

In arguments eight and nine, Smith contends that two testifying witnesses, Angela Smith ("Angela") and Chris Gregory ("Gregory"), committed perjury. Smith asserts that

Angela testified falsely in order to secure favorable treatment for herself from the government at sentencing, in a separate case involving the charge for conspiracy to distribute oxycodone. [R. 350 at 47]. He asserts that Angela's proffered testimony, in coordination with the government, was "tantamount to evidence of other crimes." [R. 350 at 47-48]. As a result, Smith argues that counsel was ineffective for failing to take advantage of Angela's prior written statement during cross-examination. Moreover, Smith argues that Gregory offered false testimony, which counsel failed to expose to the jury; specifically, Smith claims that Gregory committed perjury when he testified that he sold 100 (30-mg) roxicets for $50 each, when his DEA-6 Form dated June 24, 2013, reflected that he reported selling 100 (30-mg) *oxycodone* tablets for $45 each, and returned all the money to Smith.

Nevertheless, the arguments presented here allow Smith no relief because they are factually unsupported, and thus, fail to have any merit. "When a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which entitle him to relief. Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. U.S.,* 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted); *see also Short v. U.S.,* 504 F.2d 63 (6th Cir. 1974) ("[P]etitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review."). Furthermore, "[a] motion that merely states general conclusions of law without substantiating allegations with facts is without *legal* merit." *Lodge v. U.S.,* Nos. 2:03-CR-59, 2:05- CV-342, 2007 WL 1541917, at *2 (E.D. Tenn. May 23, 2007) (citing *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959) (emphasis added).

When calling a witness to testify, it is appropriate to reveal that the witness is testifying in the hopes that his or her own penalties will be lessened. This is also proper grounds for cross-examination and was fully explored by Smith's counsel during his questioning of Angela. Likewise, Smith fails to demonstrate any material falsity offered by Gregory during his testimony, as well as fails to show that counsel somehow failed in his duty of representation during cross-examination. Therefore, because Smith does nothing more than make bare allegations that two witnesses committed perjury, without any factual basis to illustrate the merits of his arguments, it cannot be said that his attorney was ineffective in failing to object.

## ARGUMENTS 11 AND 15:

Smith's next arguments allege that counsel failed to object to the introduction of evidence, such as pill bottles, firearms, and other items seized from his Berea home. He contends that there was no probable cause to search the home because there was no criminal-activity connection between the Berea residence and the Manchester home. Yet, again, further analysis demonstrates that this claim offers Smith no relief.

"Though free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. U.S.,* 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison,* 477 U.S. 365, 382-83 (1986) ("[W]e reject petitioners' argument that … federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue.")). In

addition to Defendant having the burden of proving performance and prejudice under *Strickland*, the Sixth Circuit Court of Appeals has found:

> Where defense counsel's "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."

*Ray,* 721 F.3d at 762 (citing *Kimmelman,* 477 U.S. at 375).

In the present case, Smith contests the basis of the search and seizure in question. However, the government did not lack probable cause. The Affidavit of Detective Richard A. Dalrymple, of the Laurel County Sheriff's Office, provides that on June 19, 2012, officers met with a cooperating witness who advised that he and others would travel to out-of-state pain clinics on behalf of Smith, and upon returning from these trips, this witness, among others, would go to the Smiths' Manchester home to "deliver the pills to Terry Smith and settle any debt." [R. 386-2 at 2-3]. Additionally, Agent Dalrymple asserts that on September 12, 2012, he and other officers met with, and interviewed, a source of information ("SOI") who corroborated the cooperating witness's account that Smith would send people to doctors' offices "to obtain oxycodone for resale," and upon their return to Smith's home, "they would split the pills with Terry Smith and settle all debts related to the trip." *Id.* at 7-8. The SOI further stated that he witnessed Smith place a large safe in the Berea residence, "describ[ing] an incident during which … Smith moved what [was] described as incriminating evidence from [Smith's] Manchester residence to the residence in Berea, KY." *Id.* Lastly, the SOI "advised that … Smith took 2 long guns . . . and 2 handguns, along with several other bags …, and moved them to 'the other place,'" which the SOI … understood to be the Berea residence. *Id.* at 8.

At trial, defense counsel questioned Agent Dalrymple regarding what officers were searching for, and ultimately found, in the Berea residence. [R. 288 at 89-91]. Specifically, defense counsel established that the only evidence of drug activity found in the Berea residence "were . . . two pill bottles, one of which was duly issued to [Smith] and one we don't know who it was [issued to] on [the] label." *Id.* at 89-90. In Smith's Reply [R. 341 at 4], he cites to *U.S. v. Ellison,* 632 F.3d 347, 349 (6th Cir. 2011), which found that "[p]robable cause existed for the search of [that defendant's] residence and [his] person because the warrant affidavit established a nexus between the place to be searched and the evidence sought." *Ellison,* 632 F.3d at 349 (citing *United States v. Bethal,* 245 F. App'x. 460, 464 (6th Cir. 2007)). In *Ellison,* "[t]he affidavit explained that a confidential informant had observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence." *Ellison,* 632 F.3d at 349. Accordingly, the *Ellison* Court found:

> [T]here was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a search of the residence would be likely to yield contraband or evidence of a crime." … This showing of a fair probability is all that is required to justify the issuance of a search warrant."

*Id.* (citing *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985)). Like *Ellison*, in the present case, the evidence that existed showed there was a fair probability that drug trafficking was taking place within both the Manchester home and the Berea residence. Additionally, during trial, defense counsel addressed the evidence found in the Berea residence and attempted to diminish its importance. *Id.* at 89-90.

Since the search warrant was supported by a fair probability that drug trafficking was occurring within the Berea residence, any objection to the search warrant or any motion to suppress the evidence found within the Berea residence would have likely been denied.

Therefore, counsel's performance was not deficient. *Strickland,* 466 U.S. at 687-88. As such, the Court need not consider whether Defendant was prejudiced by counsel's performance. *Campbell,* 364 F. 3d at 730; *Strickland,* 466 U.S. at 697. Consequently, these claims fail.

## ARGUMENT 14:

Next, Smith urges the Court to find that counsel was ineffective for failing to object to inflammatory, prejudicial testimony that Patty Smallwood died due to a drug overdose. Smith contends that the testimony of the overdose was prejudicial, and thus, counsel should have raised an objection to the testimony. [R. 350, p. 67]. Smith references specific excerpts of allegedly prejudicial testimony [R. 286 at 25[, which claims that Smallwood used the pills, obtained from Smith, the night before she died from the overdose.

Although Terry asserts that this testimony was inflammatory and prejudicial to his defense, he fails to show how the testimony was improper, irrelevant, prone to lead the jury to render a decision based on emotion rather than fact, or inflammatory. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "[R]elevant evidence is admissible," but "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 402, 403. Rule 403 allows the court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. FRE 403.

Despite Smith's quarrel with the testimony, any evidence of Smallwood's death was highly probative of an essential element of the charged drug offense. Certainly, evidence of Smallwood's death by overdose is prejudicial in the sense that exposure to it would render a conviction more likely, but the introduction of relevant evidence to influence the jury's decision is allowed, for the law is designed to protect a defendant against unfair prejudice,

not against all prejudice. In any case, FRE 403 does not offer protection against all evidence that is merely prejudicial, in the sense that it is detrimental to a party's case. *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir. 1980); *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 427 (5th Cir.2006) (" '[U]nfair prejudice' as used in Rule 403 is not equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be 'unfair'").

Although here, the testimony regarding the overdose death was certainly prejudicial, since it tended to show Smith's guilt, it was not *unfairly* prejudicial; indeed, it was both relevant and probative evidence, going directly to the essential elements of a charged offense. Therefore, Smith can demonstrate no prejudice in counsel's failure to challenge the evidence, and on this ground his motion for relief should also be denied.

### III.  FAILURE TO OBJECT TO PROSECUTORIAL ABUSE OF THE GRAND JURY PROCESS

**ARGUMENT 2:**

Next, Smith argues that counsel failed to object to perjured statements made by the case agents before the Grand Jury. In support of this contention, Smith claims: first, that agents testified falsely regarding the movement of firearms from Smith's Clay County residence to his Berea residence; second, the agents misled the grand jury to believe an autopsy had been performed on Patty Smallwood; third, the agents failed to raise the fact that Gerry Smith had a valid permit to carry a concealed deadly weapon; fourth, that agents offered misleading testimony when they asserted that records of firearms and trafficking offenses were seized from the Berea residence; and lastly, that the agents misrepresented the substances found in Smallwood's blood, post-mortem.

The grand jury belongs to no branch of government, "but is [instead] a constitutional fixture in its own right." *United States v. Navarro-Vargas*, 408 F.3d 1184, 1199 (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992). In conducting its investigation, the grand jury is not bound by the evidentiary rules and hearsay evidence is admissible. *Costello v. United States*, 350 U.S. 359, 363 (1956). Suppressed or suppressible evidence may be presented to a grand jury, and there is no requirement that the Government present the Grand Jury with each and every fact known to it in the context of seeking an indictment. *United States v. Williams*, 504 U.S. 36, 50 (1992); *United States v. Puglia*, 8 F.3d 478 (7th Cir. 1993), Rather, the standard is providing sufficient evidence to support probable cause to charge the proposed offenses. *See United States v. Adamo*, 742 F.2d 927, 937-38 (6th Cir. 1984) (holding the prosecution to be under no duty to present exculpatory evidence to the grand jury).

Rarely, prosecutorial misconduct leads to dismissal of an indictment, on the basis that a prosecutor substantially influences a grand jury with improper evidence, such as: (1) unsworn testimony by the prosecutor, (2) misrepresentations that another grand jury had already decided to indict the case, or (3) unsupported claims that the defendants had committed other crimes. *United States v. Sigma International, Inc.*, 244 F.3d 841 (11th Cir. 2001). Additionally, perjury before the grand jury is not grounds for dismissal of an indictment unless the government knew of the perjury at the time it was offered. *United States v. Strouse*, 286 F. 3d 767, 772 (5th Cir. 2002). Notwithstanding, perjury before the grand jury that was *not* knowingly sponsored by the government will not be the basis for a district court's dismissal of an indictment under its limited supervisory power over the grand jury process. *Id*. (emphasis added). In fact, the Sixth Circuit applies a strict standard for dismissal of an indictment based on allegations of prosecutorial misconduct before the grand jury. *United*

*States v. Azad*, 809 F.2d 291, 294 (6th Cir. 1986). In order to prevail, a defendant must demonstrate that "prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [the] district." *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985). In addition to showing long-standing misconduct, "a defendant who seeks dismissal of an indictment . . . must show that he was prejudiced by the prosecutor's actions" before the grand jury. *Id.* Prejudice is only possible, of course, if there was some actual impropriety by the government's attorney.

Here, Smith makes no showing of either unsworn testimony by the prosecutor, misrepresentations that another grand jury has already decided to indict the case, or unsupported claims that the defendants had committed other crimes. Further, he provides no showing that prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [this] district." *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985). Accordingly, there is no basis for the Court to find that counsel was deficient in failing to move to dismiss the indictment.

## ARGUMENTS 5, 16 & 17:

In Smith's fifth claim, he asserts that his attorney was ineffective due to his failure to object to inflammatory comments or alleged improper remarks made by the United States during opening, closing, and rebuttal. [R. 386 at 27]. Smith's main concern here is that the government questioned one witness regarding his ability to get clean from the drug abuse, the number of firearms seized in the case, the link between selling drugs to other crimes, and drugs obtained from him.

"Reviewing allegations of prosecutorial misconduct is a two-step inquiry: determining whether the statements were improper; and, if so, determining whether they were flagrant

enough to warrant reversal." *United States v. Wells*, 623 F.3d 332, 338-37 (6th Cir. 2010). "The prosecuting attorney's remarks must be considered within the context of the trial as a whole when determining whether they are improper." *Id.* at 338. "Wide latitude [is afforded] a prosecutor during closing argument, analyzing the disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair." *United State v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011). "The prosecution is not required to present closing arguments that are 'devoid of all passions.'" *Boyd*, 640 F.3d at 670 (citing *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000)). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor, because the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Beuke v. Houk*, 537 F.3d 618, 646 (6th Cir. 2008).

"'A government attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence,' the government may attempt to explain why, based on the facts, a witness's testimony is honest after the same has been attacked by the defense." *United States v. Henry*, 545 F.3d 367, 379 (6th Cir. 2008) (citing *United States v. Hurst*, 951 F.2d 1490, 1502 (6th Cir. 1991)). "[P]rosecutors 'must be given leeway to argue reasonable inferences from the evidence.'" *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000) (citing *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)); *United States v. Burroughs*, 465 Fed. Appx. 530, 535 (6th Cir. 2012). Here, there is no proof of improper vouching, statements of personal opinion, nor any other improper effect that would require review, or worse, reversal. *See Henry*, 545 F.3d at 380. Even after diligently reviewing the record and his appeal to the Sixth Circuit, now on habeas review, there is no claim of error or

evidence to support a claim of prosecutorial misconduct that would support vacating Smith's sentence.

Next, in arguments 16 and 17, Terry faults counsel's alleged failure to object to prosecutorial misconduct involving the presentation of false testimony through witnesses that had either been bribed or intimidated. These arguments were raised by Smith before the trial court, and again, those same reasons stated therein, they provide him with no relief.

The Court construes Smith's argument that the United States "bribe[d] and intimidate[d]" witnesses to address concerns of nondisclosure of promises made to them, and the appointment of counsel to represent potential defense witnesses. Essentially, Smith argues that both Brandon and Bill Stanley presented false testimony and that the United States had knowledge the testimony was false. A violation of *Giglio* occurs when the government fails to disclose evidence affecting the credibility of a witness whose "reliability . . . may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 153–54 (1972). "Impeachment evidence [against the Government's witnesses] as well as exculpatory evidence falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). But impeachment evidence is "material" only if the Government's case depended on a witness's testimony. *Giglio*, 405 U.S. at 154–55. Nondisclosure of promises made to witnesses is governed by *Giglio*, *United States v. Turner*, 490 F. Supp. 583, 599 (E.D. Mich. 1979), and the United States did not violate the protections afforded by *Giglio* in this case.

Smith also asserts that the United States harassed Susie and Randall Grubb because the Court appointed attorneys to represent them as counsel. After consulting with their respective attorneys, both Susie and Randall Grubb decided to assert their rights under the Fifth Amendment if they were called to testify. Appointing counsel to represent the interests

of a potential witness does not constitute harassment or government intimidation. *See United States v. Emuegbunam*, 268 F.3d 377, 400 (6th Cir. 2001) (collecting cases). In fact, ensuring that a potential witness is fully informed by their own counsel protects against harassment or intimidation. *See id.* Therefore, the Court finds the appointment of counsel for Susie and Randall Grubb not to be in error, and certainly finds there is no basis to warrant a new trial.

**ARGUMENT 17:**

Next, Smith alleges that counsel was ineffective for failing to object to the alleged perjured testimony of Betty Tipton. [R. 248] Smith provides an affidavit from Betty Tipton alleging that she testified falsely at trial; however, Smith does not state exactly what was said at trial that was false. Tipton communicated that she understood that the focus of the inquiry was drug trafficking by the defendant, and that she would be charged if she did not testify. She further testified that she was instructed to give false testimony about having seen Gerry with a gun and large sums of money, and that she subsequently felt bad, could not do so, and apologized to Smith. [R. 350-1].

Smith provides no factual information or statement to establish a basis for a claim of ineffective assistance of counsel. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961)(citations omitted); *see also Short v. U.S.,* 504 F.2d 63 (6th Cir. 1974) ("[P]etitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review."). Furthermore, "[a] motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit." *Lodge v. U.S.,* Nos. 2:03-CR-

59, 2:05- CV-342, 2007 WL 1541917, at *2 (E.D. Tenn. May 23, 2007) (citing *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959)).   Smith's claim for relief is therefore without merit.

## IV.  FAILURE TO PRESERVE SMITH'S INTEREST

**ARGUMENT 10:**

Next, Terry argues that counsel failed to investigate the existence of cooperation agreements the United States made with Bill Stanley and Gary Nantz. This argument, however, is also factually unsupported and therefore entitles Smith to no relief. In support of his argument, Smith cites to the testimony of Bill Stanley and Gary Nantz. Although they both reference having charges brought against them, they both testified that no promises have been made to them for leniency in exchange for their testimony.

Q. Have you ever been promised anything from my office in

exchange for your testimony here?

A. No, not that I'm aware of.

Q. Have you ever talked to the police about whether or not

they intended to prosecute you?

A. I haven't.

Q. Nobody's ever made any promises to you about it one way

or the other?

A. I've asked them.

Q. Okay. And nobody's given you assurances? Is that a fair statement?

A. Yeah.

[Testimony of Stanley, R. 287 at1492-93]

Q. Have you been promised anything by the United States or

law enforcement in exchange for your testimony here today?

A. No.

Q. Have you met with me before today?

A. No.

Q. Have you met with the police before today, talked about

this case?

A. Yes.

Q. Okay. How many times; do you remember?

A. Once.

[Nantz testimony, R. 287 at 1583-84].

As stated above, Smith's motion "merely states general conclusions of law without substantiating allegations with facts [and] is without legal merit." *Lodge v. U.S.,* Nos. 2:03-CR-59, 2:05- CV-342, 2007 WL 1541917, at *2 (E.D. Tenn. May 23, 2007) (citing *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959)). Smith's claim for relief is therefore without merit.

## CONCLUSION

Though *pro se* pleadings by a petitioner are held to a less stringent standard than those drafted by attorneys, there can be no doubt that the claims presented before us offer Smith any opportunity for habeas relief. As such, for the reasons stated herein,

**IT IS RECOMMENDED** that Smith's Motion to Vacate (R. 343) be **DENIED WITH PREJUDICE** and **STRICKEN** from the Court's docket; and

**IT IS ORDERED** that Smith's motion to expedite (R. 400), is **DENIED AS MOOT**.

\* \* \* \* \*

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

This the 18th day of June, 2019.



Signed By:

Edward B. Atkins

United States Magistrate Judge